46 F.3d 1134
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
P.P. & K., INCORPORATED, an Illinois corporation, Plaintiff-Appellant,
v.
Judith K. McCUMBER, individually and doing business as
Convenient Food Mart #581, and Cather Grocery, Incorporated,
doing business as Convenient Food Mart #581, an Illinois
corporation, Defendants-Appellees.
 No. 94-2721.
 United States Court of Appeals, Seventh Circuit.
 Argued: Dec. 7, 1994.
Decided: Feb. 6, 1995.
Order Denying Rehearing March 7, 1995.
 
 Before REAVLEY*, EASTERBROOK and MANION, Circuit Judges.
 
 ORDER
 
 1
 P.P. & K., Inc. (PP&K) appeals an order granting in part and denying in part its request for preliminary injunctive relief. Because we conclude that PP&K is entitled to possession of the premises in question, we remand for entry of further injunctive relief consistent with this opinion.
 
 BACKGROUND
 
 2
 PP&K is a franchisor of Convenient Food Mart (CFM) stores. In 1986 Defendants Judith McCumber and Cather Grocery, Inc. (collectively McCumber) entered into a franchise agreement with the predecessor of PP&K to operate a CFM store in Lincoln, Illinois. The agreement included a non-compete agreement, whereby McCumber agreed not to operate a competing store within a 2-1/2 mile radius for two years after termination of the agreement. By separate sublease agreement McCumber subleased the store premises from PP&K's predecessor. The sublease agreement requires the premises to be used exclusively as a "Convenient Food Mart." In March of 1993 PP&K purchased numerous stores and the related franchise agreements and subleases from the original CFM company. PP&K owns CFM trademarks and service marks.
 
 
 3
 McCumber signed a renewal of the sublease in 1991 (to expire in 1997) but did not sign a renewal of the franchise agreement that was sent to her in 1992. She continued to use the CFM name and marks and continued to pay rent under the sublease agreement and franchise fees under the franchise agreement. In October of 1993, McCumber wrote PP&K and informed it that the franchise agreement had expired in 1992. The letter also complained about PP&K's performance of its obligations. PP&K requested that McCumber execute a new franchise agreement, and when McCumber refused to do so, PP&K sent a formal notice of termination of franchise agreement. PP&K then filed suit. McCumber claimed that she did not sign a renewal of the franchise agreement because it was more onerous than the prior agreement and prohibited her from bringing any claims for prior breaches.
 
 
 4
 The magistrate judge held an evidentiary hearing on PP&K's application for preliminary injunction. She concluded that after the expiration of the written franchise agreement, an implied-in-fact contract arose based on the conduct of the parties, and that this contract was terminated by PP&K. The magistrate judge recommended that an injunction be issued requiring McCumber to: cease using the trademarks and service marks of CFM; refrain from representing herself as being associated with the CFM Franchise system; cease operating the store in competition with PP&K; turn over possession of the premises to PP&K; and cooperate with PP&K in transferring the store assets as provided in the franchise agreement. The district court granted part of the injunctive relief recommended by the magistrate, but rejected the recommendation that the premises and assets of the store be turned over to PP&K and that McCumber honor the non-compete agreement. The effect of the injunction is that McCumber must continue to make lease payments and cannot use CFM marks, but is not required to vacate the store or to make franchise payments which amount to about $30,000 a year.
 
 
 5
 PP&K appeals the district court order, arguing that the injunction did not go far enough because McCumber was allowed to continue to operate and maintain possession of the store. We agree with PP&K that McCumber should have been affirmatively enjoined to vacate the premises.
 
 DISCUSSION
 
 6
 We have stated that a party seeking injunctive relief pending final disposition must established (1) that it has no adequate remedy at law; (2) that it will suffer irreparable harm if the preliminary injunction is not issued; (3) that the irreparable harm it will suffer if the injunction is not granted is greater that the irreparable harm the defendant will suffer if the injunction is granted; (4) that it has a reasonable likelihood of prevailing on the merits; and (5) that the injunction will not harm the public interest. Brunswick Corp. v. Jones, 784 F.2d 271, 273-74 (7th Cir. 1986).
 
 1. Likelihood of Success
 
 7
 The district court found that PP&K was likely to succeed on the merits insofar as it sought to prevent McCumber from using the CFM names, marks, signs, etc., and holding the store out as a Convenient Food Mart. It found no likelihood of success on the other claims for injunctive relief relating to McCumber's continued use of the premises. We agree with PP&K that it has established a strong likelihood of success on its claim that it is entitled to possession of the premises.
 
 
 8
 The district court based its analysis on the peculiar wording of the two agreements between the parties -- the franchise agreement and the sublease agreement. The court concluded that the agreements drew a critical distinction between a "termination" and an "expiration" of the franchise agreement. It reasoned as follows. The grant of the franchise in Paragraph 1 of the franchise agreement initially sets out such a distinction, stating: "Termination or expiration of this Agreement shall constitute a termination or an end of the Franchise." The agreement provides that the franchisee shall cease using the CFM name and marks if there is either a termination or an expiration of the franchise.[1] However, the covenant not to compete and the franchisor's option to purchase the assets of the store are available only if the agreement is terminated.[2] The agreement was not terminated in 1992, but simply expired on its own terms and was not renewed. PP&K had no right to "terminate" the franchise agreement when it later learned that McCumber had not signed a renewal and was refusing to sign a new agreement. Nor did the sublease agreement afford PP&K a right to possession of the premises, since paragraph 22 of that agreement has a cross-default provision stating that a default of the sublease occurs if the franchise agreement is "terminated" by the franchisor. The court concluded, therefore, that McCumber should no longer use the CFM name and marks, but should be allowed to continue to operate her store.
 
 
 9
 Our problem with this analysis is that we believe that the sublease gave PP&K a right to possession regardless of whether there was a "termination" or "expiration" of the franchise agreement.
 
 
 10
 The sublease requires, in its "Purpose" provision, that the premises be used exclusively as a "Convenient Food Mart."[3] McCumber does not challenge the district court's conclusion that she lost the right to use the CFM marks, signs, logos, etc. She is no longer operating a "Convenient Food Mart." The sublease gives PP&K a right to possession, in its default and re-entry clause, for McCumber's failure to abide by this requirement of the sublease.[4]
 
 Other Requirements for Injunctive Relief
 
 11
 We conclude that PP&K has met the requirement of showing irreparable harm and lack of an adequate remedy at law. The magistrate judge found that the store, over the years, has developed significant goodwill and good reputation as a Convenient Food Mart in the minds of the consuming public. The loss of such goodwill supports a finding of irreparable harm. See, e.g., Gateway Eastern Ry. Co. v. Terminal R.R Ass'n, 35 F.3d 1134, 1140 (7th Cir. 1994) ("We have stated that showing injury to goodwill can constitute irreparable harm that is not compensable by an award of money damages."); Abbott Labs. v. Mead Johnson & Co., 971 F.2d 6, 16 (7th Cir. 1992) (noting that presumption of irreparable harm under Lanham Act "is based upon the judgment that it is virtually impossible to ascertain the precise economic consequences of intangible harms, such as damage to reputation and loss of goodwill, caused by such violations.").
 
 
 12
 As for the balance of hardships, the magistrate did find that McCumber's sole source of income is the store and that she does not have enough money to build a new store in the area. However, we agree with the magistrate judge that the harm McCumber will suffer does not render injunctive relief inappropriate. We have held that a "sliding scale" approach should be followed here: the greater the likelihood of success on the merits, the lesser the burden to demonstrate that the balance of hardships weighs in the movant's favor. Abbot Labs., 971 F.2d at 12. Here PP&K has demonstrated a great likelihood of success. Further, the harm McCumber will suffer is in part of her own making, since she refused to sign a new franchise agreement. We have also cautioned against taking a "David and Goliath" approach in franchise disputes where injunctive relief is sought.[5]
 
 
 13
 Finally, on the issue of whether the granting of injunctive relief will disserve the public interest, we cannot say that it would. We note that at least one Illinois court addressed the common law and the equities involved when a tenant has violated an exclusive use provision in a lease. The court held that violation of such a provision entitles the landlord to repossess the premises. Baird & Warner, Inc. v. Al-Par, Inc., 539 N.E.2d 192, 195-96 (Ill. App. Ct. 1989), cert. denied, 494 U.S. 1080 (1990).
 
 CONCLUSION
 
 14
 We remand the case for entry of further injunctive relief consistent with this opinion. PP&K seeks an order enforcing its covenant not to compete; but without any showing in this record that McCumber is likely to compete from different premises, we see no threatened harm to justify such additional relief.
 
 
 15
 REMANDED.
 
 ORDER
 March 7, 1995
 
 16
 The appellees McCumber and Cather Grocery, Inc. argue on petition for rehearing that McCumber now owns the premises and is entitled to terminate the lease to P.P. & K. We deny the petition without prejudice to this or other contentions upon which we have not ruled. This appeal was taken from an interlocutory order, and the district court is free to exercise the usual discretion in conducting subsequent proceedings.
 
 
 
 *
 Of the Fifth Circuit, sitting by designation
 
 
 [1]
 Paragraph 16(B) of the agreement prohibits the use of CFM marks, signs, etc. "after the termination or expiration of the Franchise ...."
 
 
 [2]
 The covenant not to compete found in Paragraph 16(D) of the agreement applies "[i]f prior to its expiration the Franchise is terminated by [franchisor] ...." The right of the franchisor to purchase the store's assets, found in Paragraph 16(F) of the agreement, similarly applies "[i]f this Agreement is terminated by [franchisor] ...."
 
 
 [3]
 Paragraph 3 of the sublease states:
 PURPOSE
 Said premises shall be used exclusively as a "Convenient Food Mart", and LESSEE shall sell such products as the LESSOR may from time to time in writing approve.
 
 
 [4]
 Paragraph 16 of the sublease states, in pertinent part:
 Lessee further covenants and agrees with lessor that if ... default shall be made in any of the other covenants, agreements, conditions or undertakings herein contained to be kept, observed and performed by the lessee ... it shall and may be lawful for the lessor at its election to declare the said term ended, and enter into the said demised premises ... and to expel, remove and put out the said lessee ... and to repossess and enjoy the said premises as in its first and former estate ....
 
 
 [5]
 As Judge Posner explained in Original Great Am. Chocolate Chip Cookie Co. v. River Valley Cookies, Ltd., 970 F.2d 273, 282 (7th Cir. 1992):
 The more difficult it is to cancel a franchise, the higher the price that franchisors will charge for franchises.... The idea that favoring one side or the other in a class of contract disputes can redistribute wealth is one of the most persistent illusions of judicial power.... Courts deciding contract cases cannot durably shift the balance of advantages to the weaker side of the market; they can only make contracts more costly to that side in the future, because franchisors will demand compensation for bearing onerous terms.