**PABST BREWING COMPANY, INC., Plaintiff,**

v.

**Jack S. CORRAO and James P. Murdock, individually and as representatives of sub-classes of persons similarly situated, Defendants.**

No. 96–C–903.

United States District Court, E.D. Wisconsin.

Sept. 27, 1996.

---

Neal, Gerber & Eisenberg by Thomas M. Knepper, Chicago, IL, for Plaintiff.

William A. Wertheimer, Jr., Attorney and Counselor, Royal Oak, MI, for Defendants.

## DECISION AND ORDER

MYRON L. GORDON, District Judge.

"There is a caustic saying which perhaps is befitting the result of this case: 'In a thousand pounds of law I find not a single ounce of love.'" *Marion v. Orson's Camera Centers, Inc.*, 29 Wis.2d 339, 345, 138 N.W.2d 733, 737 (Wis.1966).

Mr. Corrao has moved for a preliminary injunction under Rule 65(a), Federal Rules of Civil Procedure. A class action complaint for a declaratory judgment was filed on August 12, 1996, by Pabst Brewing Company, Inc. ["Pabst"]. The complaint was amended on August 14, 1996. The original and amended complaints name Mr. Corrao individually and as the representative of a sub-class of union retirees consisting of approximately 774 Pabst retirees who were represented by Brewery Workers Local 9 ["the union"] and whose collective bargaining agreements with Pabst have expired.

Mr. Murdock is named in the original and amended complaints individually and as the representative of a sub-class consisting of approximately 43 Pabst retirees who were not represented by any labor organization ["the salaried retirees"]. Pabst formerly employed all of the retirees at its Milwaukee division.

Pabst's declaratory judgment action arises out of its July 31, 1996, decision unilaterally to amend the Pabst Brewing Company Welfare Plan, also known as the "Pabst Brewing Company Medical & Dental Plan" ["the welfare plan"] and the Pabst Brewing Company Life Plan ["the life plan"]. There are two amendments: (1) the termination, effective September 1, 1996, of the eligibility of the union retirees, the salaried retirees and their dependents for coverage under the welfare plan; and (2) the elimination, effective August 1, 1996, of payments of death benefits

after age 66 for the union retirees who had retired from Pabst's Milwaukee division prior to August 1, 1996.

In its amended complaint, Pabst seeks a declaratory judgment that its "termination of eligibility and elimination of benefits to the Class Retirees under the Plans is not violative of [the Employee Retirement Income Security Act, 29 U.S.C. § 1001 et seq. ("ERISA")] and is otherwise lawful in all respects...." On August 27, 1996, Mr. Corrao filed an answer to Pabst's complaint and a counterclaim against Pabst in which he alleges that the collective bargaining agreements between the union and Pabst conferred upon the retirees of Pabst's Milwaukee division lifetime rights to health insurance benefits and life insurance benefits. Mr. Corrao maintains that these benefits survived the expiration on May 31, 1996, of the most recent collective bargaining between the union and Pabst. Mr. Corrao bases his counterclaim on § 301 of the Taft–Hartley Act, 29 U.S.C. § 185, which creates a private right of action to enforce collective bargaining agreements, and § 502 of ERISA.

Along with his answer, Mr. Corrao filed a motion for "Temporary Restraining Order and/or Preliminary Injunction" to restrain Pabst from "unilaterally eliminating health benefits" of the union retirees. Mr. Corrao's motion does not seek any injunctive relief for Mr. Murdock or for any other salaried retiree. Also, it does not relate to the elimination of life insurance payments.

The motion filed on Tuesday, August 27, 1996, asked the court to bar the termination of the union retirees' health benefits; such termination was to take effect three days later, on Sunday, September 1, 1996. In order to consider the motion before the termination date, a hearing was scheduled by this court, on short notice, to take place on Thursday, August 29, 1996, at 8:00 a.m. With the consent of the parties, this court orally certified Mr. Corrao as the class representative of the union retirees consisting of approximately 700 persons for the purpose of considering Mr. Corrao's request for a temporary restraining order.

After considering the oral arguments of the parties, their written submissions and also the amicus curiae brief filed by the Secretary of Labor in support of Mr. Corrao's motion, this court granted his motion for a temporary restraining order. The court issued an order on August 29, 1996, which restrained "Pabst, its agents, servants, employees, and attorneys and those persons in active concert or participation with them who receive actual notice of this order ... from discontinuing health insurance benefits to the sub-class" until September 27, 1996. In accordance with the court's order of August 29, 1996, Mr. Corrao posted a security bond with the clerk of this court on September 3, 1996, in the amount of $50,000. *See* Rule 65(c), Federal Rules of Civil Procedure.

An evidentiary hearing in connection with Mr. Corrao's request for a preliminary injunction was conducted on Monday, September 16, 1996, through Wednesday, September 18, 1996. There being no objection from the parties, this court orally certified Mr. Corrao as the representative of the sub-class of union retirees consisting of approximately 700 persons for the purpose of addressing his motion for a preliminary injunction. Unless otherwise indicated, this sub-class will be referred to collectively as "Mr. Corrao."

### I. LEGAL STANDARD

A party seeking a preliminary injunction has the burden of establishing that such party has "some likelihood of succeeding on the merits" of his claim. *Gateway Eastern Railway Co. v. Terminal Railroad Association of St. Louis,* 35 F.3d 1134, 1137 (7th Cir.1994). If the movant

does show some likelihood of success, the court must then determine how likely that success is, because this affects the balance of relative harms.... The more likely the plaintiff is to win, the less heavily need the balance of harms weigh in his favor; the less likely he is to win, the more need it weigh in his favor.

*Id.* (quoting *Roland Machinery Co. v. Dresser Indus.,* 749 F.2d 380, 387 (7th Cir.1984)). The movant must also demonstrate that he will suffer irreparable harm if the preliminary injunction is denied and that there is no

adequate remedy at law to compensate him for his losses. *Gateway Eastern Railway Co.*, 35 F.3d at 1137. The court must also consider the public interest—the effect that the grant or denial of the injunction would have on non-parties, *Erickson v. Trinity Theatre, Inc.*, 13 F.3d 1061, 1067 (7th Cir. 1994) and, further, whether the threatened harm to the movant if the preliminary injunction is not issued outweighs the harm an injunction may cause to the other party if the injunction is issued, *Cox v. City of Chicago*, 868 F.2d 217, 219 (7th Cir.1989). The decision whether to grant a motion for a preliminary injunction is within the discretion of the court. *American Can Co. v. Mansukhani*, 742 F.2d 314, 321 (7th Cir.1984).

## II. LIKELIHOOD OF SUCCESS

### A. Law

The union retirees urge that Pabst's unilateral termination of their health benefits constitutes a violation of the collective bargaining agreements between the union and Pabst because those agreements conferred lifetime health insurance benefits. They contend that the relevant collective bargaining agreements are ambiguous as to the duration of health insurance benefits for retirees and that extrinsic evidence demonstrates that it was the parties' intent that vested rights to health insurance benefits be bestowed upon the retired union employees.

The law in this circuit establishes that extrinsic evidence should not be used to interpret a contract where the pertinent terms of the contract are unambiguous. *Murphy v. Keystone Steel & Wire Co.*, 61 F.3d 560, 565 (7th Cir.1995); *Bidlack v. Wheelabrator Corp.*, 993 F.2d 603, 608 (7th Cir.1993), *cert. denied*, 510 U.S. 909, 114 S.Ct. 291, 126 L.Ed.2d 240 (1993); *Senn v. United Dominion Indus.*, 951 F.2d 806, 814–815 (7th Cir.1992), *cert. denied*, 509 U.S. 903, 113 S.Ct. 2992, 125 L.Ed.2d 687 (1993).

"If a district court determines that the pertinent provisions of the contract are unambiguous, it need not consider extrinsic evidence. At that point, the district court should proceed to declare the meaning of those provisions . . . ."

*Id.* at 815 (quoting *Ryan v. Chromalloy American Corp.*, 877 F.2d 598, 602 (7th Cir. 1989)). If "the court finds that a contract is unambiguous, it should interpret the contract as a matter of law." *Murphy*, 61 F.3d at 565. A contract is considered unambiguous if it is susceptible to only one reasonable interpretation. *Id.* (citing *Illinois Conference of Teamsters and Employers Welfare Fund v. Mrowicki*, 44 F.3d 451, 459 (7th Cir.1994)). "Although extrinsic evidence can be used to show that a contract is ambiguous, . . . extrinsic evidence cannot be used to *create* an ambiguity." *Murphy*, 61 F.3d at 565 (citations omitted) (emphasis in original).

The party claiming that a contract is ambiguous has the burden of proof. *AM Int'l, Inc. v. Graphic Management Assoc., Inc.*, 44 F.3d 572, 576–77 (7th Cir.1995). This party can satisfy the burden by producing objective facts, not subjective and self-serving testimony, to show that a contract which appears clear on its face is, in fact, ambiguous. *Id.*

"Extrinsic evidence should not be used to add terms to a contract that is plausibly complete without them." *Bidlack*, 993 F.2d at 608 (citing *Calder v. Camp Grove State Bank*, 892 F.2d 629, 632 (7th Cir.1990)). Moreover, the contract should be read as a whole so that all of its parts will be given effect. *Murphy*, 61 F.3d at 565.

The court of appeals for the seventh circuit has had a number of occasions to apply these general principles of contract interpretation to disputes involving the vesting of welfare benefits. In *Senn v. United Dominion Indus.*, the court of appeals was asked to interpret a collective bargaining agreement which contained the following language with respect to retiree health benefits:

Group medical and life coverages and Medicare Part B reimbursement for (a) current retirees and (b) employees who retire during the current contract shall be continued *during the term of this agreement.*

*Senn*, 951 F.2d at 815 (emphasis in original). The court of appeals ruled that the collective bargaining agreement was unambiguous and that defeated the retirees' claim that lifetime

benefits were vested. The court of appeals held that the contractual language—"during the term of this Agreement"—constituted an "explicit repudiation of any possible basis for a lifetime benefit claim." *Id.* at 815–816. Based on this conclusion, the court of appeals then held that it was wrong for the district court to have considered extrinsic evidence on the issue of whether the retirees' health benefits were vested. *Id.* at 816. Further, the court of appeals in *Senn* discussed the "default rule" as to welfare benefits granted under collective bargaining agreements and explored when it can be presumed that "entitlements established by collective bargaining agreements do not survive their expiration or modification." *Id.* (quoting *Merk v. Jewel Cos., Inc.,* 848 F.2d 761, 763 (7th Cir.), *cert. denied,* 488 U.S. 956, 109 S.Ct. 393, 102 L.Ed.2d 382 (1988)).

In *Bidlack v. Wheelabrator Corp.,* the court of appeals for the seventh circuit in an en banc decision written by Judge Posner ruled that it is presumed that "a collective bargaining agreement ceases to obligate the employer when the agreement's term (invariably three years) is up. But that is not an irrebuttable presumption." *Bidlack,* 993 F.2d at 607. The court of appeals explained that the presumption can be rebutted in situations where the collective bargaining agreement is "merely vague," rather than silent or explicit, as to the duration of benefits. *Id.* at 608. In such situations, the court recognized that it is proper to receive extrinsic evidence to enable the court to determine whether or not the duration of benefits was meant to be perpetual. *Id.*

The court in *Bidlack* deemed the collective bargaining agreements at issue to be vague as to the duration of welfare benefits to retirees. The agreements stated that once retired employees reach the age of 65

they would be entitled to certain supplemental health benefits, also paid for by the company, "which, when combined with Medicare, will provide a level of benefits equal to the Wheelabrator Blue Cross–Blue Shield plan for active and retired employees sixty-five (65) years of age and over" and which "shall be continued for the spouse after the death of the retiree."

*Id.* at 605. The court of appeals in *Bidlack* distinguished the agreements in the case before it with those in *Senn* by noting that the agreements in *Senn* contained durational language (i.e., "during the term of this Agreement") and also included an integration clause declaring the agreement to be the exclusive source of the parties' rights and duties. *Id.* at 608.

In a very recent decision, the court of appeals for the seventh circuit held that a collective bargaining agreement which tied the expiration of welfare benefits provided under a welfare plan to the expiration of the collective bargaining agreement unambiguously demonstrated that the welfare benefits were not vested. *Murphy v. Keystone Steel & Wire Co.,* 61 F.3d at 566. The collective bargaining agreement in *Murphy* provided that the welfare plan "will remain in effect ***during the term of this agreement*** all as heretofore agreed upon and revised." *Id.* at 565 (emphasis added). In addition, the collective bargaining agreement included an integration clause which stated that the collective bargaining agreement "together with . . . any other matter incorporated herein by reference, concludes all collective bargaining between the parties for the duration of the Agreement. . . ." *Id.* The court of appeals rejected the retiree's argument that the agreement's promise that the plan "will remain in effect," combined with the benefit language under the plan itself, conferred a lifetime benefit; such conclusion, the court of appeals ruled, would render the durational language of the collective bargaining agreement meaningless or superfluous. *Id.*

## B. Discussion

 The document that is most relevant to Mr. Corrao's contract claim is the collective bargaining agreement of June 1, 1993–June 1, 1996, between the union and Pabst. It is undisputed that this collective bargaining agreement is now expired. Article VII of that agreement provides:

***For the term of this Agreement,*** the Employer, at its sole cost and expense, shall provide major medical, health, dental, sickness and accident, and life insurance benefits in accordance with and as summarized

in Appendix A attached, and the Letter of Agreement.... It is understood that the benefits set forth may be provided by specifically referred to plans or equivalent benefits will be provided under different plans including self insurance by the Employer, and further that the actual insurance policies, documents or plans shall control over the summary set forth in Appendix A in the event of conflicting provisions.

(Plaintiff's Ex. 3) (emphasis added). The language of Article VII quoted above can be found in all of the collective bargaining agreements between Pabst and the union since 1984. Prior to the 1984 agreement, the language of Article VII of the collective bargaining agreements between the parties was different than the language quoted above. This court's determination as to whether the collective bargaining agreement is ambiguous as to the duration of health benefits to union retirees starts with the 1993–1996 collective bargaining agreement of the parties.

The "term of this Agreement" referred to in Article VII is spelled out in Article XXIX of the 1993–1996 collective bargaining agreement which states: "This Agreement cancels and takes the place of all previous contracts and agreements and shall continue in full force and effect from June 1, 1993 until June 1, 1996...."

As a preliminary matter, Mr. Corrao asserts in his brief in support of his motion for a preliminary injunction that Pabst concedes in paragraph 23 of its amended complaint that the collective bargaining agreement does not contain a provision that explicitly vests benefits nor one to the contrary. Paragraph 23 of Pabst's amended complaint alleges that "the terms of [the collective bargaining agreements] were always, and remain, silent with regard to Pabst's right to eliminate, amend and/or terminate coverage, benefits or eligibility under the Plans." Contrary to Mr. Corrao's contention, that allegation, is made in the context of a declaratory judgment action under ERISA rather than in response to Mr. Corrao's contract counterclaim; thus it does not amount to a concession on Pabst's part that the pertinent collective bargaining

agreement is not explicit as to the duration of health benefits to union retirees.

The unqualified language of the collective bargaining agreement clearly establishes as a matter of law that Mr. Corrao's benefits did not vest under the collective bargaining agreement. The introductory phrase to Article VII—"For the term of this Agreement"— constitutes a lucid contractual understanding that the health insurance benefits provided to the union retirees would not unilaterally be terminated so long as the collective bargaining agreement remained in effect and also that unless contractually extended, Pabst's legal obligation to provide health benefits ended when the collective bargaining agreement itself expired.

In Appendix A of the collective bargaining agreement, there is a provision granting health benefits to the spouse of a retiree. The relevant provision of Appendix A provides:

(4) the coverage described in subsections (1), (2), and (3) shall continue for the covered dependents of a deceased retired employee to the end of the sixth month in which death occurs.

At first blush, the above-quoted spousal benefit clause seems to provide that health benefits could outlast the collective bargaining contract. In *Bidlack*, the court of appeals for the seventh circuit considered a spousal benefit clause and found that it created ambiguity as to the duration of the company's obligation to provide health insurance benefits. In light of *Bidlack*, this court found it appropriate to grant Mr. Corrao's request for a temporary restraining order. However, after thorough examination of the controlling labor contract, it is clear that the quoted clause in Appendix A falls short of creating ambiguity as to the duration of the health benefits called for in the negotiated contract. In the instant case, the collective bargaining agreement contains explicit durational language. The court would have to disregard the words, "For the term of this Agreement" in order to read the spousal benefit clause in Appendix A as conferring a lifetime benefit. *See Murphy*, 61 F.3d at 565. Giving the quoted clause of Appendix A all the weight it is reasonably entitled to

receive, I am persuaded that it does not enable Mr. Corrao to meet his burden of proof.

Mr. Corrao's argument concerning the impact of the spousal benefits clause also overlooks the language of Article VII which states that "It is understood ... that the actual insurance policies, documents or plans shall control over the summary set forth in Appendix A in the event of conflicting provisions." The relevant welfare plan is recited in the company's reply to the counterclaim of Mr. Corrao at Ex. B, Section 6.1. It provides that "the Company [Pabst] reserves the right to amend the Plan at any time...." In addition, the welfare plan, at Ex. B, Section 6.2 states that "The Company may terminate the Plan at any time or may terminate any Program."

Consistent with these provisions, the Blue Cross & Blue Shield Group Insurance Plan ["the insurance booklet"] states in part:

This is a general outline of your Employment Benefit Plan. This plan is administered by Blue Cross & Blue Shield United of Wisconsin. Your Employee Benefit Plan is outlined in detail under a Schedule of Benefits given to Blue Cross & Blue Shield by your employer. *This schedule is subject to change as a result of actions taken by your employer.*

(Plaintiff's Ex. 9.) (emphasis added).

Read together, it is clear that these insurance documents, which under the express language in Article VII of the collective bargaining agreement control over the summary of benefits set forth in Appendix A, do not confer lifetime health insurance benefits on the union retirees. The welfare plan and the insurance booklet were incorporated by reference in the 1993–1996 collective bargaining agreement.

The presence of the integration clause in Article XXV of the collective bargaining agreement is yet another reason for not resorting to extrinsic evidence. Article XXV provides, in part: "It is the intent and purpose of the parties that this Agreement be in full and complete compliance with all applicable state and federal laws, rules and regulations, and that *it covers the entire agreement of the parties"* (emphasis added). As noted in *Bidlack,* "the presence of such a clause is further indication of the parties' desire to limit a free-ranging judicial discretion to interpolate terms." *Bidlack,* 993 F.2d at 608.

In sum, I find that the collective bargaining agreement at issue in this case and the pertinent insurance documents unambiguously demonstrate that Pabst is not legally obligated to provide lifetime health insurance benefits to Mr. Corrao. Thus, I am not permitted to consider the extrinsic evidence offered by Mr. Corrao in support of his claim to lifetime benefits.

In view of the above, I conclude that Mr. Corrao does not have a likelihood of succeeding on the merits of his contract claim under § 301 of the Taft–Hartley Act. Mr. Corrao's motion for a preliminary injunction was based solely on his contract claim. Thus, like the parties, I will not consider his likelihood of success as to his ERISA claim.

Mr. Corrao has failed to meet his burden on the important threshold requirement for preliminary injunctive relief—"some likelihood of success." Thus, the court need not consider the remaining prerequisites to injunctive relief. Accordingly, Mr. Corrao's motion for a preliminary injunction will be denied. For the same reasons articulated above, the temporary restraining order that was issued on August 29, 1996, must be vacated.

The union retirees cannot succeed on their claim to vested lifetime health insurance benefits, but I share the humane thoughts made by the late Judge Hubert Will in his concurring opinion in *Senn.* Although he agreed with his fellow judges on the appellate panel that the language of the collective bargaining agreement in that case barred the use of extrinsic evidence and necessitated the denial of lifetime benefits for the retirees, this greatly-admired judge added an

expression of sympathy for retirees who have received and relied upon company financed life and health insurance plans for many years and who then suddenly find themselves unprotected. This case is not an isolated example and is one of the reasons for the growing demand that some

form of national health plan be adopted so that retirees and other persons will be able to afford and secure the medical services they need.

*Senn,* 951 F.2d at 818.

Therefore, IT IS ORDERED that Mr. Corrao be and hereby is certified as the representative of a sub-class of union retirees consisting of approximately 700 persons for purposes of addressing his motion for a preliminary injunction.

IT IS ALSO ORDERED that Mr. Corrao's motion for a preliminary injunction be and hereby is denied, with costs.

IT IS FURTHER ORDERED that the temporary restraining order entered on August 29, 1996, be and hereby is vacated.