Gail BATES, et al., Plaintiffs–Appellees,

v.

Gordon JOHNSON, Director, Illinois Department of Children and Family Services, Defendant–Appellant.

Nos. 89–2611, 89–3095.

United States Court of Appeals, Seventh Circuit.

Argued April 16, 1990.
Decided May 8, 1990.

Diane Redleaf, Laurene M. Heybach, Dori Rand, Violet Clark, Nancy Katz, Cynthia Ruiz, Richard M. Wheelock, Legal Assistance Foundation of Chicago, Chicago, Ill., for plaintiffs-appellees.

Gary M. Griffin, Paula Giroux, Mary Ellen Coughlan, Asst. Attys. Gen., Christine M. Tchen, Susan Getzendanner, Charles F. Smith, Skadden, Arps, Slate, Meagher & Flom, Chicago, Ill., for defendant-appellant.

Michele Odorizzi, James A. Serritella, Mayer, Brown & Platt, Chicago, Ill., for Catholic Conference of Illinois, amicus curiae, and Child Care Ass'n of Illinois, amicus curiae.

Before BAUER, Chief Judge, and EASTERBROOK and KANNE, Circuit Judges.

EASTERBROOK, Circuit Judge.

Since 1981 the regulations of the Illinois Department of Children and Family Services have promised parents weekly visits with children who had been removed from their custody, if the Department plans to reunite parents and children. Performance fell short of promise. In 1984 Gail Bates and several other persons filed this class action contending that both the Constitution and the Social Security Act require Illinois to carry out its visitation policy. In 1986 the parties negotiated, and the court entered, a consent decree requiring Illinois

to implement its regulations to the letter for the next two years.

■ Plaintiffs were satisfied with the state's written policy; the state was unwilling to promise to stick with it for the indefinite future. Paragraph 4 of the decree tackles this common impasse:

> In settlement of plaintiffs' claims in their complaint and without admitting any violation of federal law, defendant agrees to maintain and enforce the policy [in its regulations] throughout Illinois, except that no provision herein precludes defendant from modifying this policy. If DCFS officially proposes a change of its policy ... at any time [before] the two year anniversary date, then prior to the time such regulation is officially adopted, DCFS will comply with the Illinois Administrative Procedure Act ... and, in addition, agrees to appear before this Court to discuss the nature and extent of the proposed changes. The entry of this Agreed Order will not prejudice the rights of plaintiffs and class members to reassert the claims made in the complaint herein in the event the DCFS policy ... is changed or modified....

Paragraph 4 gives the plaintiffs their immediate objective while reserving the state's right to change course. If the state does so, it must use formal rulemaking and tell the court in advance. Paragraph 4 gives the plaintiffs and their allies an opportunity to persuade the state that it ought not change (or show the state how it can accommodate their concerns); if persuasion fails, they may argue, while the original rules remain in force, that the proposed new rules would violate federal requirements. It is the sort of bargain we have urged district judges to insist on, *White v. Roughton,* 689 F.2d 118, 121 (7th Cir.1982). A state's right to make fresh choices about domestic policy as political officials turn over may even be an implied term in a consent decree, given the norm that public officials may not bind their successors. If as a matter of state law an official lacks authority to commit the state to maintain a rule beyond his term of office, that official cannot accomplish through a consent decree what he has no power to accomplish, period. The decree's force comes from *consent,* not a resolution of the merits, and it creates obligations no broader than those to which the signatories have actual authority to give assent. *United States v. Beebe,* 180 U.S. 343, 351–55, 21 S.Ct. 371, 374–76, 45 L.Ed. 563 (1901); *Derrickson v. Danville,* 845 F.2d 715, 718 (7th Cir.1988); *Dunn v. Carey,* 808 F.2d 555, 559–60 (7th Cir.1986); *Morgan v. South Bend Community School Corp.,* 797 F.2d 471, 477–78 (7th Cir.1986). See also Michael W. McConnell, *Why Hold Elections? Using Consent Decrees to Insulate Policies from Political Change,* 1987 U. Chi. Legal Forum 295. Cf. *Money Store, Inc. v. Harriscorp Finance, Inc.,* 885 F.2d 369, 376–77 (7th Cir.1989) (concurring opinion).

As of June 5, 1986, the state was under the district court's order to follow its visitation regulations unless it changed them through notice-and-comment rulemaking. In other words, it was required by a federal decree to follow state law. The decree also obliged it to go beyond state law by notifying parents of their visitation rights. Illinois did not send the notice or do anything else. It ignored its own regulations and thereby the decree. On September 14, 1988, more than 18 months after plaintiffs filed a motion asking the judge to hold the state in contempt of court, the state stipulated that it was out of compliance with the decree; on September 20 it stipulated that it had *never* been in compliance. The district judge concluded that

> Defendant entered into the decree in order to simply get Plaintiffs off its back, yet never seriously intended to live up to it. We do not take kindly to what we perceive to be three years of bad faith conduct, conduct which was in blatant contravention of a court order. We find Defendant's suggestion that the appropriate remedy is revival of Plaintiff's [sic] right to litigate to be ludicrous. Plaintiffs were promised two years of compliance with the decree, but have not received even so much as a minute of compliance.

1989 WL 75954, 1989 U.S.Dist. Lexis 7658 (N.D.Ill.1989). As a remedy for the state's

misconduct, the district judge on June 29, 1989, entered an order providing for financial sanctions and adding:

> The original decree is to continue in force for a period of two years from the date of this order.

Defendant filed appeal No. 89–2611 from this order. Neither in the brief nor at oral argument, however, did Illinois ask us to modify or set aside any part of the order of June 29.

Illinois turned to the opportunities created by ¶ 4 of the "original decree". It promulgated a new set of rules curtailing parental visitation rights, invoking the "emergency" clause of the Illinois Administrative Procedure Act, Ill.Rev.Stat. ch. 127 ¶ 1005.02, which allows the change to be followed rather than preceded by notice and comment. Plaintiffs howled bloody murder—arguing not only that ¶ 4 requires the notice to precede the change but also that the order of June 29 prevents the state from resorting to ¶ 4. They urgently asked the district judge for relief.

Construing his own order, the judge concluded that he had not modified ¶ 4 as a sanction for contempt. In open court on July 18 the judge stated that "My order didn't address it. My order didn't address a change in the rule." The judge did not cotton to the state's belated use of ¶ 4, however, and in court on August 23 told the state that it must restore and carry out the original rules.

> MR. GRIFFIN (counsel for the state): ... [I]s it your ruling that the Paragraph 4 of the original order remains in effect, but is it your interpretation of it that the specific rule change we proposed was not acceptable?
>
> THE COURT: That's right.... I think your proposed change, which I don't think you have a right to make at this late date, but even if you do, is wrong and improper and not envisaged under the agreement, because it essentially in my view puts us back to square one. I never envisaged, and I don't think the plaintiffs did, either, that this was some kind of escape hatch for the department where they could simply start all over again and vitiate the effect of the entire agreement they entered into.

On August 28 the court entered an order captioned "partial stay" staying all monetary penalties and providing that any time consumed on appeal would be added to the two-year extension of the decree. The court neither clarified its order of June 29 nor enjoined the state from changing its rules. The state filed appeal No. 89–3095 from this order but again does not ask us to modify or vacate any part of the district court's order.

Wanting to appeal from what it took to be an oral injunction, the state asked the district judge to enter some order construing ¶ 4 or enjoining a modification. The judge refused either to hold a hearing or to enter any further written order. In open court on September 15 the judge stated:

> I am going to leave this thing exactly the way it is.... It is not as simple as saying, "Oh, well, you're enjoining us from—" I am not enjoining you from changing the rules; I am enjoining you from changing the rules the way you propose to change the rules. You can't do that and I have said that, and I've said it repeatedly.... How can I make it any clearer?

Defendant now asks us to use its appeals from the orders of June 29 and August 28 as the vehicle for reversing the district judge's injunction, which the state believes misconstrues ¶ 4 of the consent decree.

■ Like the state, we are puzzled by the district judge's unwillingness to put on paper what he said several times in court. Oral statements are not injunctions. A judge who proclaims "I enjoin you" and does not follow up with an injunction has done nothing. *Eakin v. Continental Illinois National Bank & Trust Co.*, 875 F.2d 114, 118 (7th Cir.1989); *Bethune Plaza, Inc. v. Lumpkin*, 863 F.2d 525, 527–28 (7th Cir.1988); *Azeez v. Fairman*, 795 F.2d 1296, 1297 (7th Cir.1986). Injunctions are not like Islamic divorces, accomplished by intoning a formula thrice in public. Fed.R. Civ.P. 65(d) provides that "[e]very order granting an injunction ... shall set forth

the reasons for its issuance; shall be specific in terms; [and] shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained". No such "order" has been issued.

■ When a judge does not record an injunction or declaratory judgment on a separate document, the defendant is under no judicial compulsion. As we said in *Bethune*, 863 F.2d at 527, an opinion or statement in court "is not itself an order to act or desist; it is a statement of reasons supporting the judgment. The command comes in the separate document entered under Fed.R.Civ.P. 58, which alone is enforceable. There must be a separate document, with a self-contained statement of what the court directs to be done. So if the opinion contains language awarding declaratory relief [or an injunction], but the judgment does not, the opinion has been reduced to dictum; only the judgment need be obeyed." At the moment, Illinois is under no decree. It need not dance to the judge's tune. Until the judge enters an injunction, Illinois may carry out its plans. Because the state is not under an enforceable constraint, there is nothing before us on appeal.

Plaintiffs respond that the order of June 29 prevents Illinois from changing its rules. Not so. Rule 65(d) requires an injunction to be "specific in terms". An order *extending* the decree as a sanction is not equivalent to an order *modifying* the decree as a sanction, or to an order *interpreting* the decree as forbidding a particular deed. The judge himself denied that his order of June 29 modifies or interprets the decree. That leaves only the "partial stay" order of August 28, which also does not mention the subject. The district judge believed, and reiterated on September 15, that his instructions are oral. As a matter of law,

oral instructions are no instructions—at least, not legally *binding* if a party wishes to put up a fight, as Illinois does.

■ If the district judge believes that the state is legally forbidden to alter the rules that were in force at the time the decree was signed in 1986, he has three options. First, he may prevent the change as a sanction for contempt of court.* Second, he may construe ¶ 4 of the original decree and conclude that it does not allow change. Third, he may hold that under the Constitution or the Social Security Act Illinois must grant visitation privileges as extensive as those provided in the 1981 regulations. Before doing any of these things, the judge must offer the state an opportunity to submit briefs and, if the decision depends on factual questions, an evidentiary hearing. (There has never been an evidentiary hearing in the case.) Then the judge must "set forth the reasons" for his decision and enter a written order "specific in terms". Illinois will be able to appeal from such an order if it continues to believe (as it earnestly argues to us) that ¶ 4 authorizes it to proceed in the fashion it elected and that modification as a sanction for contempt exceeds the district court's discretion.

■ Before entering an order the district court should inquire into subject-matter jurisdiction. Plaintiffs wanted and obtained a federal order compelling a state to follow state law. Under *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984), a federal court lacks subject-matter jurisdiction to compel a state agency to adhere to state law. Because *Pennhurst* is a jurisdictional case, the defendant's consent to this remedy does not create jurisdiction; the parties may not stipulate to judicial power. Jurisdiction depends on the federal claims the plaintiffs asserted. No one has

---

* Some of the court's language on September 15 suggests that he had this in mind. "I'm not enjoining you from making rule changes; what I said was, first of all, if you were going to do that, you should have done it over the two or three years this thing was in business and not negotiating with these people to live up to the old rule, so there is sort of an estoppel notion in

there that you can't now march in when you have ignored the consent decree you have entered into for years and then magically produce some kind of rule, and, secondly, you can't amend without bringing it to my attention and showing me a good reason to do it, and I don't think that, given your history in this litigation, that you can engage in that type of conduct."

discussed on appeal what these might be, and the nature of the federal claims is not immediately apparent given that the children have been properly removed from their parents' custody. If removal satisfies statutory and constitutional rules, and if in the exercise of professional judgment social workers conclude that the best interests of the children are not served by parental visits, it is not clear what could be the source of a federal command to allow visits anyway. Although a non-frivolous federal claim ensures federal jurisdiction, the district judge ought to determine that the plaintiffs have one before proceeding. *Crowley Cutlery Co. v. United States,* 849 F.2d 273, 276–77 (7th Cir.1988) (collecting cases); *Dozier v. Loop College,* 776 F.2d 752 (7th Cir.1985).

The appeals are dismissed on the ground that the appellant does not seek relief from any provisions of the orders from which the appeals have been taken. If the district court should enter an order enjoining the state from altering the visitation policy in force in 1986, any appeal will return to this panel, which has heard the parties' arguments on the merits. Further briefing will be confined to matters occurring after this opinion.