In the
United States Court of Appeals
For the Seventh Circuit

No. 98-1008

CENTRAL STATES, SOUTHEAST AND SOUTHWEST
AREAS PENSION FUND, and HOWARD MCDOUGAL, trustee,

Plaintiffs-Appellees,

v.

WINTZ PROPERTIES, INC., a Minnesota corporation,

Defendant-Appellant,

and

GEORGE L. WINTZ, individually and as president
of Wintz Properties, Incorporated,

Appellant.


Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 97 C 873--George W. Lindberg, Judge.


Argued June 2, 1998--Decided September 8, 1998


 Before FLAUM, MANION, and DIANE P. WOOD, Circuit
Judges.

 MANION, Circuit Judge.  Wintz Properties, a
business belonging to a multiemployer pension fund
under ERISA, withdrew from the Central States,
Southeast and Southwest Areas Pension Fund, but
failed to pay the accompanying withdrawal liability
required by the statute. That prompted the Fund to
sue Wintz in federal court over the nonpayment; the
district court ordered Wintz to pay. Still Wintz
failed to make payment, choosing instead to pay
other creditors. The continued non-payment prompted
the district court to issue a contempt judgment of
close to $1 million against Wintz (the company) and
George Wintz (its president) personally, an order
that both have appealed. We ordered the parties to
brief the issue of this court's jurisdiction over
what at first glance appears to be a nonfinal order
to make interim payments to the Fund. After
reviewing the parties' arguments and the full
record, we have determined that we have
jurisdiction over Wintz's appeal and affirm the
district court's contempt order.

I.

Wintz Properties became a defendant in this case after one of George Wintz's other companies (Wintz Freightways, Inc.) went out of business and stopped contributing to Central States' multiemployer pension trust fund. The Fund determined that the defunct company had effected a complete withdrawal from the trust, a determination that imposes "withdrawal liability" on the withdrawing company. Because Wintz Freightways obviously couldn't pay the Fund, the Fund followed the money over to Wintz Properties (and still other companies owned by Wintz that the parties and the district court refer to as the "Wintz Controlled Group")./1

The Fund's determination that Wintz Freightways withdrew from the Fund was significant under ERISA/2 because while an employer may withdraw from a fund, it pays a penalty if it does. The penalty is called "withdrawal liability"; it means the employer is liable to the plan for unfunded, vested pension benefits as determined by the Fund's trustee. See 29 U.S.C. sec.sec. 1381-83. The employer may contest the amount demanded by the trustee, but only through mandatory arbitration procedures. 29 U.S.C. sec. 1401. In the meantime, while arbitration is pending, the employer has no choice under the law but to keep to its schedule of installment payments. See Chicago Truck Drivers, Helpers & Warehouse Union Pension Fund v. Century Motor Freight, Inc., 125 F.3d 526, 534 (7th Cir. 1997). If the arbitrator ultimately sides with the employer that it owes no withdrawal liability, then whatever has been paid is refunded.

In this case the Fund's trustee determined that under ERISA (which sets out formulas for these things), Wintz's withdrawal liability amounted to $2,958,136.71, payable to the Fund. Wintz did not pay that amount, nor make any installment payments toward the figure, prompting the Fund to file suit in district court; shortly afterward, the Fund filed a motion for a preliminary injunction ordering Wintz to pay. Wintz's initial theory seemed to be that it did not owe withdrawal liability because it had not withdrawn from the Fund in the first place. But instead of simply defending the Fund's suit on that basis at arbitration, Wintz filed counterclaims against the Fund, charging it with making an unlawful assessment under ERISA, violating a duty of good faith and fair dealing under the statute, as well as a duty to investigate whether a withdrawal actually had occurred. (Some of these may not be counterclaims so much as "defense[s] masquerading as . . . positive claim[s] for relief." Automatic Liquid Packaging, Inc. v. Dominik, 852 F.2d 1036, 1038 (7th Cir. 1988).)

After holding hearings on the Fund's motion for a preliminary injunction, the court granted the motion under the heading "Order to Compel Payments." While on appeal Wintz argues that the order was too ambiguous to be enforceable, it is hard to imagine how it could be any more clear:

The Defendants . . . are jointly and severally ordered to (a) pay all past due payments as set forth in the schedule of payments attached to the Pension Fund's June 17, 1996 Notice and Demand for payment of withdrawal liability on or before June 30, 1997, and (b) pay all future interim withdrawal liability payments on a timely basis or post a bond (as set forth in ERISA and the regulations promulgated thereunder) to guarantee such payments.

Still Wintz did not pay--not after the Fund's notice and demand for payment, not after receiving service of the Fund's suit, not after being ordered to pay by the district court. Only now the reason for Wintz's nonpayment shifted. In more hearings before the district court on the Fund's motion to show cause why Wintz should not be held in contempt for failing to pay, Wintz argued that it did not pay because financially the company was crippled. That strategy might have worked except for two circumstances: Wintz himself invoked the Fifth Amendment rather than testifying about the company's condition and why it did not comply with the court's order (invoking the Fifth Amendment in a civil context invites an inference that the witness' testimony would be adverse to his interests, see Baxter v. Palmigiano, 425 U.S. 308, 318 (1976)), and discovery in the case revealed that Wintz was still somewhat liquid. In fact, the company was paying other creditors instead of the Fund, and George Wintz himself seemed able to pay some of his personal creditors (such as credit card companies).

After discovering that Wintz was paying other creditors but not the Fund, the court held Wintz (the company) and George Wintz (personally) in contempt for disobeying its previous order compelling payment, and entered a contempt judgment against both Wintz and its president (jointly and severally) in the amount of $978,041.42. The bulk of this sanction ($959,698.31) reflected the amount Wintz had paid other creditors instead of the Fund since the court issued its order compelling payments. The remainder consisted of attorneys' fees and costs incurred in preparing and prosecuting the contempt petition. Wintz appeals the entire contempt sanction; it claims the sanction was an improper means of enforcing the district court's previous order compelling Wintz to pay the Fund.

II.

 Wintz's principal argument is that it should not have been sanctioned and held in contempt for failing to pay the interim withdrawal liability installment payments that ERISA requires and that the district court's order commands. Wintz challenges only the court's enforcement of the order to pay the withdrawal liability through a contempt sanction; it does not challenge the order itself (as we have noted, ERISA unequivocally establishes a "pay now, arbitrate later" scheme). Before we consider Wintz's arguments attacking the contempt sanction, we must determine whether we have jurisdiction over it. "Whether a judgment of civil contempt is appealable at the time entered, rather than later, at the windup of the entire case in the court of first instance, depends on the appealability of the underlying order, the order the judgment of civil contempt is intended to coerce the contemnor to obey." In re Rimsat, Ltd., 98 F.3d 956, 963 (7th Cir. 1996); see also Cleveland Hair Clinic, Inc. v. Puig, 106 F.3d 165, 167 (7th Cir. 1997) ("An adjudication of civil contempt used to enforce a judicial order is not appealable if the underlying order is itself not appealable."). We asked the parties to discuss our jurisdiction in their briefs, and each side has responded that we have jurisdiction over the contempt finding, but for different reasons. Wintz argues that we have jurisdiction because the underlying order was appealable as a final decision under 28 U.S.C. sec. 1291. The Fund tells us that we have jurisdiction because the underlying order is a preliminary injunction appealable under sec. 1292(a)(1). We consider each possibility because a third exists which would divest us of jurisdiction and require dismissal of Wintz's appeal-- namely, that the underlying district court order is neither a "final decision" nor an injunction, but rather is an order partly but not wholly adjudicating the Fund's complaint (much like an order awarding partial summary judgment).

 We first tackle Wintz's theory that the contempt finding is appealable because the order it disobeyed (the order compelling payments) is a final decision that disposed of the underlying litigation initiated by the Fund. This is a rather surprising position given Wintz's concession that at the time it filed this appeal its own counterclaims against the Fund remained. Only "final decisions" are appealable under sec. 1291, and the presence of the counterclaims made the court's order compelling payment decidedly nonfinal. See Alonzi v. Budget Construction Co., 55 F.3d 331, 333 (7th Cir. 1995). Nor were the counterclaims dismissed by implication when the court ordered Wintz to pay, because it is possible for the Fund to violate the technical provisions of

ERISA even though it is correct that an employer owes it money. The only way the court's order could have achieved finality under sec. 1291 was through Rule 54(b), id., which allows courts to issue final and appealable orders dismissing fewer than all claims, but Wintz did not seek nor did the court apply a designation of finality under this rule.

While acknowledging that at the time of this appeal its claims (since dismissed) were pending in the district court, Wintz tells us that some of our cases compel us to treat the order as final and appealable despite its seeming incompleteness here. For example, in Trustees of Chicago Truck Drivers v. Central Transport, Inc., 935 F.2d 114 (7th Cir. 1991), we were faced with a similar case in which an employer stopped making payments to a union pension fund. After the Fund filed suit seeking interim payments pending arbitration, the district court ordered the company to pay but over the Fund's protests the court refused to hold the company in contempt for the nonpayment. The Fund appealed that decision, prompting us to consider our jurisdiction over the court's order compelling payment. We ultimately concluded that we had jurisdiction because the court's order essentially wrapped up the case before it:

The Fund obtained a judgment compelling [the company] to pay its accrued liability and to make future payments as they become due. The order was entered on the form appropriate to civil judgments. Such an order is final and appealable under 28 U.S.C. sec. 1291. It is the end of the case. . . . [T]he complaint asked for one thing, money, and the entire litigation has been concluded. The definition of a final decision is one wrapping up the case and leaving "nothing for the court to do but execute the judgment," which is exactly what this decision does. Jurisdictional rules should be clear, and we think it best to simplify the subject by holding that the terminating order of any suit seeking "interim payments" under sec. 1399(c)(2) is a final decision, appealable under 28 U.S.C. sec. 1291.

Id. at 116-17 (internal citation omitted).

If this case simply involved a fund's pursuit for interim payments and a district court's order compelling those payments, we would have no trouble relying on Central Transport, as well as Trustees of the Chicago Truck Drivers, Helpers & Warehouse Workers Union Pension Fund v. Rentar Industries, Inc., 951 F.2d 152 (7th Cir. 1991), a later case applying the Central Transport holding. We would agree with Wintz that an order compelling payment to the Fund is a "terminating order" under sec. 1399(c)(2) because there is nothing left for the court to do but execute the judgment. But at the

time of this appeal the district court had Wintz's counterclaims (three of them) to deal with, and while it was likely at that point that the court's award in favor of the Fund spelled doom for those claims, it was not necessarily so. (One of the counterclaims alleged a breach of good faith and fair dealing, and it is at least theoretically possible for the Fund to have been entitled to the monies it sought but to have gone about collecting that money in an unlawful way under ERISA.) The district court's order also neglected to address the Fund's claim for liquidated damages and interest; both the Supreme Court and this court have held that a decision is not final where pre-judgment interest has yet to be determined. See Osterneck v. Ernst & Whinney, 489 U.S. 169 (1989); Mercer v. Magnant, 40 F.3d 893, 896 (7th Cir. 1994). Nor (unlike in Central Transport) was the district court's order entered on a form appropriate to civil judgments. In short, while it is accurate to interpret Central Transport as holding that orders compelling ERISA withdrawal liability payments sought by the Fund can be final and appealable under sec. 1291, they are not automatically appealable such that we utterly ignore the rules disrupting finality that we apply in every other case. The district court's order was not a final decision under sec. 1291, meaning we have jurisdiction over Wintz's appeal only if the Fund is correct that the order was an injunction enforceable through contempt and appealable as an interlocutory decision "without regard to finality" under 28 U.S.C. sec. 1292(a)(1). Ford v. Neese, 119 F.3d 560, 562 (7th Cir. 1997).

 On its face the underlying order compelling interim payments to the Fund looks like an injunction. The order instructs Wintz to do something--pay the Fund what the statute requires--which after all is the point of an injunction; "[i]n effect, the injunction wrote statutory prohibitions into a decree enforceable by contempt." Szabo v. U.S. Marine Corp., 819 F.2d 714, 718 (7th Cir. 1987). Wintz's principal argument on appeal is that the order could not have been an injunction because it did not comply with Rule 65(d) of the Federal Rules of Civil Procedure, which requires that an injunction "shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained." Fed. R. Civ. P. 65(d). We think the order was crystal clear and self-contained, but at this point Wintz's failure to appeal the grant of the injunction makes elaboration unnecessary. "Not having appealed from the grant of the injunction," Wintz "cannot argue that it is too vague to be enforced . . . or that it violates Rule 65(d) of the Federal Rules of Civil Procedure," Szabo, id., both of which occupy a considerable portion of Wintz's briefs on appeal. Put another

way, Rule 65 is not jurisdictional in the way Wintz wants it to be-- "in the sense that its requirements are nonwaivable, so that any [technical] failure to comply with those requirements would make the injunction a nullity even if no party had ever objected." Chicago & Northwestern Trans. Co. v. Railway Labor Executives' Assoc., 908 F.2d 144, 149 (7th Cir. 1990). Wintz's further problem is that even if we sided with the company and decided that the injunction in this case was unenforceably vague or violated Rule 65(d), it would not necessarily follow that we have jurisdiction under Wintz's preferred "final decision" route. As we discussed earlier, the likely result in that case would be that we have no jurisdiction at all. See Bates v. Johnson, 901 F.2d 1424, 1428 (7th Cir. 1990) ("Until the judge enters an injunction . . . there is nothing before us on appeal.").

We need not follow this detour any longer. The parties treated the underlying order as an injunction at the time it was entered, and that is how we will treat it here. We acknowledge that during one of the hearings the district court went to some lengths not to call its order to compel payments an injunction, instead labeling it an order requiring "interim interim payments." From the record, it appears the court was careful in how it referred to its order so that it could avoid wading through the balancing test courts must apply before issuing injunctions. See, e.g., Gateway Eastern Railway Co. v. Terminal Railroad Assoc. of St. Louis, 35 F.3d 1134, 1137 (7th Cir. 1994); see also Fed. R. Civ. P. 65. But "[n]omenclature does not determine whether an order is a preliminary injunction" and thus appealable under sec. 1292(a)(1). Doe v. Village of Crestwood, Il., 917 F.2d 1476, 1477 (7th Cir. 1990). If nomenclature were important, in this case the name attached to the order ("Order to Compel Payments") could not have been more facially insistent, and therefore, injunctive. Accordingly, we have jurisdiction over the company's appeal from the district court's contempt sanction and proceed to Wintz's arguments against it.

In truth we are somewhat hesitant to call the district court's contempt judgment anything but a second injunction to pay the Fund. It is true that the judgment contains a dollar amount, but it looks to be less than the accrued installment payments (approximately $200,000 a month) owed but not paid to the Fund. At oral argument the Fund's attorney informed us that the contempt sanction in this case would be refunded to Wintz if the arbitrator rules in the company's favor (if Wintz loses in arbitration, then the amount it pays under the contempt order would be credited toward its withdrawal liability). Contempt sanctions typically

are not credits toward liability or refunded, nor for that matter are they paid to an opponent rather than the court. But the parties and the district court refer to the judgment as a contempt sanction, probably because the judgment is entered against George Wintz (personally, along with the Fund) even though he was not a named party in the underlying litigation. At least as to Mr. Wintz, we agree that the judgment is indeed a sanction, so for that reason and ease of reference we will treat it that way.

Wintz's primary argument against the contempt judgment (which we review to determine if the court abused its discretion, United States v. Torres, 142 F.3d 962, 969 (7th Cir. 1998)) appears to be that the district court's underlying injunctive order was so ambiguous as to be unenforceable through contempt. This sounds similar to Wintz's argument that the injunction was vague and violated Rule 65(d), both discussed above and dismissed at this point as tardy. But perhaps Wintz is arguing that the order compelling payments was so absurdly non-directive that it gave Wintz no notice of what was expected, and thus no notice even that it should be clarified or appealed, until of course the district court sanctioned Wintz for disobeying it. We have nearly opened up a can of worms, because if that were the case the underlying order would be a nullity (thus divesting an appellate court of jurisdiction to review it in the first instance). Chicago & Northwestern Trans. Co., 908 F.2d at 149; see also Die Seamless Cylinder Int'l, Inc. v. General Fire Extinguisher Corp., 14 F.3d 1163, 1166 (7th Cir. 1994) ("It may seem a considerable paradox that if the judge's error is so flagrant as to make his order void, the appellate court loses jurisdiction. But a void order has no bite, and Article III precludes an appeal from a harmless order."). There is no obligation to obey an injunctive nullity, Bates, supra, so we concede it would be strange to make a party obey a contempt citation enforcing the nullity.

We need not open the can of worms because the district court's order compelling payments was not hopelessly defective or ambiguous in any of the ways forwarded by Wintz. It is true that the district court's order makes reference to a schedule of delinquent payments attached to the Fund's notice and demand mailed to Wintz, and in that sense is not completely self-contained. At most this amounts to a violation of Rule 65(d) (since waived, see above); it does not transform an otherwise valid injunction into a nullity. Setting this point aside, Wintz makes it sound as if the parties had been quibbling over the amount the company owed. In fact, Wintz refused to pay anything at all, a wholesale disregard of ERISA's "pay now, arbitrate later" scheme, Chicago Truck

Drivers Pension Fund, 125 F.3d at 534, and a decision that forced the Fund to seek payment in court. The court ordered Wintz to pay, and Wintz even returned to court to clarify the order. Based on our review of the parties' exchanges before the district court judge, we find it unreasonable for Wintz to argue at this point that it had no idea what the order demanded.

Wintz also contends that the district court improperly sanctioned the company for paying other creditors. From Wintz's perspective, at most the district court's underlying order compelling payments was a judgment that had to get in line behind other judgments outstanding against the company. Wintz is correct that the district court based the amount of the sanction on what Wintz had paid to other creditors instead of the Fund. But nothing in the order itself deprives Wintz of the right to pay other creditors, even before the company paid the Fund, so long as the Fund is paid. This is not a case wherein Wintz violated an injunction because it had no money whatsoever; it obviously was paying several creditors except the one entity entitled to Wintz's money under the terms of the court order. Nor is this a case wherein the evidence before the district court highlighted extenuating circumstances preventing the Fund from doing what ERISA requires. When it came time for Wintz to present those circumstances, Wintz's president, George Wintz, appeared before the district court but refused to answer questions under the Fifth Amendment of the United States Constitution. That was his right, but the court was entitled to draw a negative inference from his refusal to speak, and in turn his refusal to pay.

The remainder of Wintz's arguments do not excuse its failure to comply with the court's injunction and pay the Fund. Contrary to Wintz's invitation, we will not wade through the record to determine whether paying the Fund would force the company into bankruptcy. We have already observed that Wintz has managed to pay other creditors instead of the Fund, but in all events federal judges "have no equitable power to excuse interim payments." Central Transport, Inc., 935 F.2d at 119. In enacting ERISA, Congress decided that interim payments were mandatory--no excuses--because the "stakes" are safer in the interim if they are held by the Fund. Funds don't go out of business the way thinly capitalized employers do, id., meaning they can readily refund the payments to a company like Wintz if an arbitrator rules against them. All that remains is Wintz's argument that the district court should not have held its president, George Wintz, personally in contempt in addition to his company. The order compelling payments was not simply directed at Wintz Properties, but at the corporations' "officers" as well. George Wintz is

the sole officer and shareholder of Wintz Properties, making the underlying injunction applicable to him, and his company's failure to comply with it his problem, too.

III.

ERISA makes it clear that an employer withdrawing from a multiemployer pension fund must pay withdrawal liability to the Fund, and our cases make it equally clear that interim payments must be made pending arbitration. See Chicago Truck Drivers, supra. Wintz refused to make those payments, prompting the district court to issue an injunction followed by a finding of contempt. We affirm the contempt judgment. The Fund asks us to award it attorneys' fees and costs incurred in defending against Wintz's appeal, and in this case we will do so. Section 1132(g)(2) of ERISA requires a court to award reasonable attorneys' fees and costs to a fund that must obtain a judgment in order to collect delinquent contributions to a multiemployer fund, which is exactly what the Fund had to do in the district court. See also Chicago Truck Drivers, 125 F.3d at 535 (affirming an award of attorneys' fees and costs "because [the employer] precipitated the plan's suit in the district court by unlawfully failing to make any installment payments pending arbitration."). The law should be clear enough by now to avoid the necessity of a suit like the Fund's, and an appeal like Wintz's, which is part of the reason the Fund's fees and costs are properly attributed to Wintz. Finally, we take note that since filing this appeal Wintz has added two more to our docket relating to successive district court orders to pay the Fund. Not (unfortunately) on their own motion to consolidate, but instead on our own suggestion, the parties wisely agreed to suspend briefing on those cases until the opinion in this case was decided. We are confident that Wintz will carefully review those appeals (and subsequent ones like them) to determine whether they remain viable in light of our decision today.

AFFIRMED.

FOOTNOTES

/1 As gleaned from the record, it appears that one of the companies principally owned by George Wintz, Wintz Freightways, contributed to the union pension fund before it merged with Central States Xpress, Inc., an Indiana corporation. Following the merger, Xpress failed to continue making payments to the Fund, and soon afterward was placed into involuntary bankruptcy by its creditors and went out of business. The Fund determined that for the purposes of ERISA, Wintz's other companies (called

the Wintz Controlled Group) constituted a single employer and were financially responsible for Xpress' withdrawal from the pension fund.

/2 As amended by the Multiemployer Pension Plan Amendments Act of 1980, 29 U.S.C. sec. 1381 et seq.