230 F.Supp.2d 963 (2002)
CHICAGO TRUCK DRIVERS, HELPERS AND WAREHOUSE WORKERS UNION (INDEPENDENT) PENSION FUND, et al., Plaintiffs,
v.
BROTHERHOOD LABOR LEASING, et al., Defendants.
No. 4:93CV2376 DDN.
United States District Court, E.D. Missouri, Eastern Division.
September 12, 2002.
*964 Nelson L. Mitten, Riezman Berger, P.C., Clayton, MO, William W. Leathem, David S. Allen, Joseph M. Burns, Jacobs and Burns, Chicago, IL, for Chicago Truck Driver, Helpers and Warehouse Workers Union (Independent) Pension Fund.
William W. Leathem, David S. Allen, Joseph M. Burns, Jacobs and Burns, Chicago, IL, for Fred Boudreau, Jack Stewart, William H. Carpenter, John Broderick.
Peter G. Bender, St. Louis, MO, for MFI Leasing Co., Falls City Industries, Inc., Middlewest Freightways, Inc., Brotherhood Labor Leasing, Peter Gabriel Bender.
Joanne Martin Descher, Devereux and Murphy, Clayton, MO, Jay E. Sushelsky, Sushelsky Law Firm, St. Louis, MO, Peter G. Bender, St. Louis, MO, for Steven M. Gula, Ann Gula.
William H. Behrens, Wildwood, MO, pro se.
Michael L. Helt, Gladstone, MO, pro se.
Steven H. Schwartz, Brown and James, P.C., St. Louis, MO, for Dysart, Taylor, Lay, Cotter & McMonigle, P.C.
Lisa Demet Martin, David S. Slavkin, Bryan Cave LLP, St. Louis, MO, Howard B. Becker, Sandberg and Phoenix, St. Louis, MO, for Evans & Dixon Law Partnership.
Terrance J. Good, Tyler S. McClay, Lashly and Baer, P.C., St. Louis, MO, for Lashly Baer.

MEMORANDUM
NOCE, United States Magistrate Judge.
This matter is before the court on the amended petition of plaintiffs asking the court to find certain parties in contempt of orders of this court, and to impose sanctions (Doc. No. 358). This aspect of the case was remanded by the Eighth Circuit for further proceedings and for explicit findings on whether the parties have satisfied their respective burdens. Chicago Truck Drivers Pension Fund v. Brotherhood Labor Leasing, 207 F.3d 500 (8th Cir.2000). A hearing was held on the petition on January 29, 2002.

*965 Background

Plaintiffs Chicago Truck Drivers, Helpers and Warehouse Workers Union (Independent) Pension Fund and its trustees (the Fund), commenced this action in November 1993, against four corporations, related by ownership with shareholders and officers were Steven Gula, William Behrens, and Robert Ferguson. The suit was brought under the Employee Retirement Income Security Act of 1974, as amended by the Multi-employer Pension Plan Amendments Act of 1980, 29 U.S.C. §§ 1381-1405, to recover withdrawal liability owed the Fund by Be-Mac Transport Company, which withdrew from the Fund in December 1992. Because of their ownership relationships, the four defendant corporations were a "single employer" under 29 U.S.C. § 1301(b)(1).
In February 1993, the Fund notified this company of its withdrawal liability, payable in quarterly installments beginning March 1993. On October 14, 1995, the Fund notified the company that its recalculated withdrawal liability was $455,719.00, payable by the company, and all businesses under common control, in 36 quarterly installments of $17,834, plus a final payment of $1,300.25. The Fund noted that at that point, the corporations were delinquent in their payments in the amount of $196,174, plus interest thereon in the amount of $21,328.21, plus liquidated damages of 20% in the amount of $39,324.80. This letter was attached to the Fund's second amended complaint in which the Fund sought judgment for the delinquent withdrawal liability and an order compelling the corporations to commence making their installment payments. (Doc. No. 126).
On December 4, 1996, this court sustained the Fund's motion for summary judgment, holding that the four defendant corporations were a single employer jointly and severally liable for the withdrawal liability. The court stated that the corporations "shall be required, within 60 days of the date of the judgment order issued herewith, to pay to plaintiffs the interim payments demanded by the plaintiffs in the amended demand." Chicago Truck Drivers Pension Fund v. Brotherhood Labor Leasing, 950 F.Supp. 1454, 1471 (E.D.Mo.1996). Any other disputes between the parties, such as the amount of the withdrawal liability, were ordered to be submitted to an arbitrator under 29 U.S.C. § 1401. Id.
On December 13, 1996, the Fund moved for an amended judgment to require the corporations to pay the past due interim payments from the date of the Fund's original notice and demand, plus interest and liquidated damages thereon, as well as the prospective payments for the remainder of the liability. (Doc. No. 157).
On June 25, 1997, the court issued an amended order. No payments had yet been made pursuant to the December 1996 order. The amended judgment required the defendant corporations to make all past due payments plus interest and liquidated damages thereon for a total of $422,820.81, plus daily prejudgment interest of $64.50 from December 18, 1996. The court also ordered that 23 future payments of $17,834 be made quarterly commencing on August 1, 1997, and continuing through November 1, 2002, with a final payment on February 1, 2003, of $1,300.25. In addition, the court ordered the corporations to pay the Fund's attorney's fees and expenses in the sum of approximately $400,000. Chicago Truck Drivers Pension Fund v. Brotherhood Labor Leasing, 974 F.Supp. 751, 756 (E.D.Mo.1997). On March 18, 1998, this judgment was summarily affirmed. Chicago Truck Drivers Pension Fund v. Brotherhood Labor Leasing, 141 F.3d 1167, 1998 WL 121398 (8th Cir.1998) (table decision).
*966 On November 30, 1998, having received no payments from the defendant corporations, the Fund filed a motion for contempt against the corporate defendants and Gula personally. (Doc. No. 269). The court denied the motion, because, following discovery, the Fund was "unable to produce evidence sufficient for a finding that the defendants have assets for making the judgment debt payments but did not do so." (Doc. No. 311).
On appeal, the Eighth Circuit remanded the matter for further consideration. The appellate court held that the payment orders were injunctions, binding upon Gula as the agent of the corporate defendants, and subjecting him, as well as the corporations, to a contempt finding for violation of the orders. Chicago Truck Drivers Pension Fund v. Brotherhood Labor Leasing, 207 F.3d 500, 507 (8th Cir.2000). The case was remanded, because it was unclear whether this court had properly considered the burdens of the parties in a contempt proceeding, and had made no express findings concerning whether Gula committed acts which might support a finding of contempt against him personally. Noting that Federal Rule of Civil Procedure 65(d) makes injunctions binding upon parties' attorneys, the Court of Appeals found "troubling" the suggestion that the corporations' attorneys advised them to pay their legal fees in lieu of making court-ordered payments to the Fund. Id. at 507 n. 7. The court did not address this matter, however, because the Fund had only sought a contempt sanction against the corporations and Gula. Id.
In its amended petition for contempt now before the court, the Fund names as alleged contemnors the corporate defendants; Steven Gula and his wife, Ann Gula; Behrens; two individual attorneys (Michael Helt and Peter Gabriel Bender); and four law firms (Dysart Taylor Lay Cotter & McMonigle, P.C. [Dysart Taylor], Evans & Dixon, Lashly & Baer, and Michael Best & Friedrich, LLC [Michael Best]), which represented the corporate defendants or their officers at various times during the underlying lawsuit.[1] The Fund essentially asserts that these parties acted in concert to dissipate the corporations' assets to the alleged contemnors' advantage, ensuring that the payments ordered to be made to the Fund would not be made, in contempt of this court's orders.
On May 15, 2001, the Fund filed its "Prima Facie Case" of contempt in which it asserted that since December 4, 1996, Steven Gula transferred a total of approximately $229,945.56 of the corporate defendants' assets to various third parties, including the other alleged contemnors. Approximately 88% of the corporate expenditures noted by the Fund were paid to the alleged contemnor attorneys and law firms for legal fees. Other expenditures included the purchase of tickets to various sports events. The Fund submitted supporting documentation, primarily in the form of copies of checks.
The Fund further asserted that Steven Gula had the corporate defendants funnel his salary through his wife's checking account to avoid Internal Revenue Service's (IRS) garnishments against him. Steven Gula testified by deposition on January 4, 2001, that Dysart Taylor told him that, while the corporate defendants were appealing the court's payment order, he "had the right to pay legal bills and generally-accepted operating expenses and to make the payments described in [the court's order] if there was enough cash available *967 after paying those expenses." Dep. at 13-14. The Fund asserted that attorneys from Michael Best confirmed this advice.
The court concluded that, under the guidelines set forth by the Eighth Circuit in remanding this case, the Fund established a prima facie case of contempt against the alleged contemnors and that an evidentiary hearing was warranted.

Hearing Testimony and Evidence
At the hearing, Ann Gula testified that she knew there were problems with her husband's trucking companies and the IRS, but did not know what they were. She made no decisions regarding the companies, and knew nothing about any judgments issued in the underlying lawsuit. She knew nothing about Steven Gula paying his salary to her so the IRS would not come after that money.
Steven Gula testified that he was the representative of the corporate defendants in the underlying lawsuit and was the person who hired and dealt with the corporations' attorneys. He did not recall receiving a copy of, or seeing, the court's June 1997 order until after the contempt charges were filed (November 30, 1998). At that point, the issue was essentially moot, because almost all of the corporations' assets were gone. Since the December 1996 judgment, the corporations paid the Gula family approximately $15,000 for rent and utilities. The sports tickets at issue were not paid for by the corporations, but by the customers who used them. Gula testified that he never intended to avoid the judgment of the court. No one ever told him when, how, or to whom to pay the judgment.
Gula further testified that the corporations paid all of Dysart Taylor's fees in the underlying suit (approximately $203,000), except for the costs incurred by the firm for defending itself against a motion for sanctions. In September 1998, Helt refunded to the corporations $8,000, the unused portion of a retainer fee. Gula used this money to pay bills of the corporations, including attorney's fees.
Gula testified that he mistakenly paid monies to Evans & Dixon that were not owed, but he never asked the firm for the money back. Gula hired Bender to represent him personally in a suit against him by the IRS. Gula mentioned the present underlying suit to Bender, but did not discuss it with him.
Gula testified that, in a conversation he had on February 26, 1997, with Howard Lay of Dysart Taylor, the subject of paying the Fund pursuant to the December 1996 order was discussed. According to Gula, they discussed the fact that a motion for reconsideration had been filed and the advisability of filing an appeal. Gula testified that he was told to make sure no material sums of money from the corporations were paid to himself, but that paying bills for the normal ongoing operations of the corporations was allowable. Gula testified that based on this discussion, it was his understanding that no money would have to be paid to the Fund pursuant to the judgment for a long time because of the appeals process. According to Gula, a settlement offer by the corporations for $50,000 was also discussed, and during this time period, Gula's attorneys were working on several other legal matters for him.
A letter dated February 27, 1997, from Lay to Gula, was introduced into evidence. The letter purports to set forth what was discussed the previous day. No mention is made of Gula paying, or not paying, the Fund. (Gula Exh. B). After Gula expressed concern that Michael Helt, who was dealing with his case, was leaving Dysart Taylor, Lay wrote to Gula on March 27, 1997, that he believed Dysart Taylor should withdraw from representing Gula. (Gula Exh. D). A letter from Lay to Gula dated April 11, 1997, asking Gula to *968 sign and return the withdrawal form noted that Gula had to decide "what needs to be done if [the Fund] begins collection efforts." Lay also wrote that in light of another suit by another pension fund against the corporations for withdrawal liability payments, Gula needed "some strategy to either fight until the money is gone, try to settle with one or more, or file bankruptcy," noting that none of these options was "great." (Fund Exh. 1 at 454-55).
An individual testified at the hearing that he purchased sports tickets through the Gulas and always reimbursed them for the tickets. The last witness to testify was Howard Lay. He testified that Dysart Taylor had essentially no contact with Steven Gula after the February 26, 1997, conversation and withdrew from the case shortly thereafter. He did not recall any discussion with Gula regarding paying, or not paying, the Fund money pursuant to the December 1996 order. He did not recall telling Gula that he did not have to pay the Fund anything pending an appeal, and doubted that he would have told him that. He testified that it was his practice to memorialize in writing conversations he had with clients, and that, had he discussed paying the Fund with Gula, he would have noted this in the letter of February 27. He did not believe the December 1996 order was an "injunction." Lay further testified that, based on a review of the firm's records, Dysart Taylor received from Gula approximately $12,000 in fees after December 4, 1996.
The Fund introduced into evidence copies of checks showing that after December 4, 1996, Gula issued checks from the corporate defendants for a total of approximately $218,500 to entities other than the Fund. Included in this amount is approximately $28,200 for tickets to sports events, $15,300 to Ann Gula, $39,400 to Michael Helt, $12,900 to Dysart Taylor, $29,000 to Peter Bender, $72,500 to Michael Best, and $4,900 to Behrens (in deferred compensation).
The Fund also introduced the 1996 tax return of one of the defendant corporations which showed $217,894 in cash assets and $89,701 in other assets as of December 31, 1996 (Dysart Taylor Exh. K); and the same corporation's 1997 return which showed $182,692 in cash assets and $90,201 in other assets as of December 31, 1997. (Dysart Taylor Exh. L).
The Fund's exhibits included evidence of requests for payment of fees by Dysart Taylor dated October 19, 1998 (Fund Exh. 1 at 532); by Michael Best dated January 29 and February 1, 1999 (id. at 579-80), and by Lashly & Baer in February 1997 (id. at 587-88, 560).

Post-hearing Arguments
In its post-hearing brief, the Fund argues that, because Behrens, Michael Best, Lashly & Baer, Bender, and Helt offered no evidence at the hearing, this court should find them in civil contempt for two reasons. First, by not offering any evidence at the hearing, they failed to rebut the Fund's prima facie case, and they raised the inference that any evidence they might have presented would have been adverse to them. Second, the Fund argues that, even if the corporate attorneys did not affirmatively advise Gula not to pay the Fund, their failure to advise him to comply with the court's orders, while at the same time accepting corporate assets that would make it impossible for the corporations to comply with the court's orders, constitutes contempt. (Doc. Nos.464, 480).
Gula argues that all payments made by him after December 4, 1996, were lawful and appropriate obligations of the corporate defendants. He asserts that none of the attorneys ever sent him copies of the court's December 1996 or June 1997 orders, *969 or ever advised him to pay the Fund anything. He also faults the Fund for not securing the corporate assets during the appeals process. He argues that the evidence does not show any intent on his part to defy the court's orders, and that the Fund has not met its ultimate burden of proving contempt on Gula's part. (Doc. Nos.456, 468).
Dysart Taylor argues that the Fund offered no evidence that Dysart Taylor did anything to violate this court's orders or to aid or abet Gula to do so. It argues that the December 4, 1996, order was not a final order and was not an injunction, and that Dysart Taylor withdrew from the case before the court issued the June 7, 1997, order. Dysart Taylor notes that it is undisputed that it told Gula that the corporate defendants should consider bankruptcy or settlement, which was sound legal advice while this court was considering the pending motions to amend or reconsider the December 4, 1996, order. (Doc. Nos. 452, 472).

Findings and Conclusions
"One of the overarching goals of a court's contempt power is to ensure that litigants do not anoint themselves with the power to adjudge the validity of orders to which they are subject." International Bhd. of Elec. Workers, Local Union No. 545 v. Hope Elec. Co., 293 F.3d 409, 415 (8th Cir.2002) (quoting Chicago Truck Drivers Pension Fund, 207 F.3d at 504). One of the purposes of civil contempt proceedings is to compensate the complainant for losses. Chicago Truck Drivers Pension Fund, 207 F.3d at 504. A nonparty may be held in contempt where the nonparty is legally identified with, or aids or abets, a named party in a concerted violation of a court order. Id. at 505 n. 5, 507. The essence of this rule is that parties may not nullify a decree by carrying out prohibited acts through aiders and abetters, although they were not parties to the original proceeding. Id. at 506-07.
It has already been determined by the Eighth Circuit that the district court's contempt power extends to Gula, as a party who had notice of the court's orders and the responsibility to comply with them. Id. at 507. That court also held that Federal Rule of Civil Procedure 65(d), which expressly makes injunctions binding upon nonparties and parties' attorneys, applies to the orders in this case compelling interim withdrawal payments. Id. at 505 & n. 5 (citing Central States, SE & SW Areas Pension Fund v. Wintz Props., Inc., 155 F.3d 868, 876 (7th Cir.1998)) (company's president held in civil contempt for failing to comply with court order requiring company to make ERISA withdrawal liability payments). Title 28 U.S.C. § 636(e)(4), as amended on November 13, 2000, grants magistrate judges civil contempt authority in cases such as this in which the magistrate judge presides with the consent of the parties.
The Fund, as the party seeking civil contempt, bears the initial burden of proving, by clear and convincing evidence, that the alleged contemnors violated the court's orders. The burden then shifts to the alleged contemnors to show an inability to comply.
[A] mere assertion of "present inability" is insufficient to avoid a civil contempt finding. Rather, alleged contemnors defending on the ground of inability must establish: (1) that they were unable to comply, explaining why "categorically and in detail;" (2) that their inability to comply was not "self-induced;" and (3) that they made "in good faith all reasonable efforts to comply."
Chicago Truck Drivers Pension Fund, 207 F.3d at 506 (quoted cases omitted); see also United States v. Santee Sioux Tribe of Neb., 254 F.3d 728, 736 (8th Cir.2001).
*970 The court first finds that Steven Gula acted in contempt of this court's orders. It is undisputed that all payments made by the corporate defendants after December 4, 1996, were authorized by Gula, and dissipated the corporate assets. Nor is there a material issue as to the disposition of the assets. Even if his testimony that he did not physically see this court's orders until contempt proceedings were initiated were to be believed, the court rejects as not credible any suggestion that he was unaware of the content and import of these orders when they were issued. Although the December 1996 order did not specifically order the corporations to pay the past due withdrawal liability, interest, and liquidated damages, it was clear from the context of the case and the grant of summary judgment to the Fund that the corporations were liable for this amount. There was certainly no ambiguity that quarterly payments of $17,834 had to commence within 60 days of the date of the December order. Rather than make these payments, Gula authorized other payments from corporate assets. Even after the June 1997 order, no payments were made to the Fund.
In terms of the burden-shifting frame-work set forth above, the court finds that the inability of the corporations, acting through Gula, to comply with the court's orders was self-induced, and that they, again acting through Gula, did not in good faith make all reasonable efforts to comply.
The court also finds that Dysart Taylor acted in contempt of this court by aiding and abetting the violation of the court's orders. The court finds that Dysart Taylor knew that corporate assets were insufficient to comply with the court's orders and at the same time pay Dysart Taylor's attorney's fees. Dysart Taylor's April 11, 1997, letter to Gula, presenting as a viable option that Gula "fight until the money is gone," supports this finding.
The record, however, does not support the Fund's allegations of contempt against the other attorneys or law firms involved in this matter. The court finds no credible evidence that any of the attorneys other than Dysart Taylor hinted or suggested to Gula that he should pay their fees in denigration of his obligation to pay the Fund the money owed it. The court is not persuaded that these parties can be held in contempt of court for failing to make sure Gula was meeting his obligation under the court's orders. Thus, the Fund did not meet its burden of proving by clear and convincing evidence that these nonparties aided or abetted the corporations or Gula in a concerted violation of the court's orders.

Appropriate sanctions
In remanding the case, the Eighth Circuit explained that finding Gula in contempt of court
for failing to direct his corporations to comply with the payment orders does not mean that Gula can now be held personally liable for the underlying withdrawal payments themselves. The Fund did not sue Gula initially for the withdrawal payments; it may not now attempt to obligate him for the underlying judgment through a contempt proceeding.... In the event Gula is ultimately found in contempt, it will be up to the court to fashion an appropriate sanction.
Chicago Truck Drivers Pension Fund, 207 F.3d at 507-08 (internal citations omitted).
The court is mindful that the purpose of a sanction for civil contempt in this case is compensatory and remedial with respect to the Fund; its purpose is not to punish Gula or Dysart Taylor. As noted above, one of the defendant corporations had $217,894 in cash assets at the end of 1996. *971 Proper compliance with this court's orders would have mandated that Gula pay at least this amount to the Fund, pursuant to the December 4, 1996, order, and certainly pursuant to the June 1997 order. The court will order Gula personally to pay the Fund this amount, less the $12,855.55 paid in fees to Dysart Taylor; Dysart Taylor will be required to pay that amount over to the Fund as its sanction. See Central States SE & SW Areas Pension Fund, 155 F.3d at 872 (affirming contempt sanction against company's president in the amount the company had paid other creditors rather than the pension fund since the court issued its order compelling the company to make withdrawal liability payments to the fund), cited with approval in Chicago Truck Drivers Pension Fund, 207 F.3d at 505 & n. 5. These sanctions leave the Fund with a significant shortfall compared to the full amount of the judgment it obtained against the corporations. The court finds and concludes, however, that to require either Gula or Dysart Taylor to pay more would be punitive.
An appropriate order is issued herewith.

ORDER
Pursuant to the Memorandum issued herewith,
IT IS HEREBY ORDERED that the amended petition of plaintiffs Chicago Truck Drivers, Helpers and Warehouse Workers Union (Independent) Pension Fund and its trustees (the Fund) that certain parties be found to be in contempt of orders of this court and to impose sanctions (Doc. No. 358) is granted in part and denied in part.
IT IS FURTHER ORDERED that Steven Gula, having been found in civil contempt of court, pay the Fund $205,038.45, plus interest thereon hereafter at the rate provided by law.
IT IS FURTHER ORDERED that Dysart Taylor Lay Cotter & McMonigle, P.C., having been found in civil contempt of court, pay the Fund $12,855.55, plus interest thereon hereafter at the rate provided by law.
IT IS FURTHER ORDERED that the petition for contempt is denied as to the other alleged contemnors.
IT IS FURTHER ORDERED that the renewed motion of Lashly & Baer, P.C., for judgment as a matter of law (Doc. No. 475) is sustained.
NOTES
[1] The Fund has dismissed from these contempt proceedings the Evans & Dixon, LLC, law firm. (Doc. No. 433).