# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-3622

_____

Chicago Truck Drivers, Helpers &   *
Warehouse Workers Union Pension   *
Fund; Fred Boudreau, trustee of   *
Chicago Truck Drivers, Helpers and   *
Warehouse Workers Union Pension   *
Fund; Jack Stewart; William H.   *
Carpenter, the present trustees;   *
John Broderick,   *
  *
   Plaintiffs - Appellees,   *
  *
   v.   *   Appeal from the United States
  *   District Court for the
Brotherhood Labor Leasing, a Missouri   *   Eastern District of Missouri.
corporation; MFI Leasing Company,   *
a Missouri corporation; Falls City   *
Industries, Inc., a Kentucky   *
corporation; Middlewest Freightways,   *
Inc., a Missouri corporation,   *
  *
   Defendants,   *
  *
   v.   *
  *
Steven M. Gula; William H. Behrens;   *
Ann Gula,   *
  *
   Contemnors,   *
  *
Dysart, Taylor, Lay, Cotter &   *
McMonigle, P.C.,   *

|                                                    | * |
| ------------------------------------------------- | - |
| Contemnor - Appellant,                            | * |
|                                                    | * |
| Peter Gabriel Bender; Michael, Best &             | * |
| Friedrich, LLC; Lashly Baer,                      | * |
|                                                    | * |
| Contemnors.                                        | * |

———————

Submitted:  September 12, 2003
Filed:  May 4, 2005

———————

Before MORRIS SHEPPARD ARNOLD, BOWMAN, and MELLOY, Circuit Judges.

———————

BOWMAN, Circuit Judge.

The law firm of Dysart, Taylor, Lay, Cotter and McMonigle, P.C., appeals from the order of the District Court[1] finding the firm in civil contempt of court and imposing sanctions.  We affirm.

In the underlying action that gave rise to the finding of contempt, Chicago Truck Drivers, Helpers and Warehouse Workers Union Pension Fund and its trustees (collectively, the Fund) sued several corporations owned by Steven Gula to collect withdrawal liability payments under ERISA.[2]  At one time during the relevant period,

———————

[1]The Honorable David D. Noce, United States Magistrate Judge for the Eastern District of Missouri, sitting with the consent of the parties under 28 U.S.C. § 636(c).

[2]Employee Retirement Income Security Act of 1974 (as amended by the Multiemployer Pension Plan Amendments Act of 1980), 29 U.S.C. §§ 1001–1461. Under ERISA, an employer that withdraws from a multiemployer pension plan will be liable to the plan for "the allocable amount of unfunded vested benefits."  29 U.S.C. § 1381(b)(1).

the corporations were represented by Dysart Taylor. On December 4, 1996, the District Court entered summary judgment for the Fund, holding that the corporations would "be required, within 60 days of the date of the judgment order issued herewith, to pay to plaintiffs the interim payments demanded by the plaintiffs in the amended demand." Chicago Truck Drivers Union Pension Fund v. Bhd. Labor Leasing, 950 F. Supp. 1454, 1471 (E.D. Mo. 1996). In accordance with the provisions of ERISA, the court ordered that any further disputes between the parties would be "submitted to an arbitrator." Id. On June 13, 1997, Dysart Taylor was granted leave to withdraw from the case. On June 25, 1997, the District Court entered an amended judgment against the corporations, which included awards to the Fund for delinquent and future withdrawal liability, with dollar amounts noted and due dates specified, and awards for attorney fees, costs, interest, and liquidated damages. Chicago Truck Drivers Union Pension Fund v. Bhd. Labor Leasing, 974 F. Supp. 751, 756-57 (E.D. Mo. 1997).

In November 1998, the Fund sought to have the corporations and their officers held in contempt for failure to pay any of the court-ordered judgments. The District Court denied the Fund's petition. The Fund appealed and we remanded. Chicago Truck Drivers Union Pension Fund v. Bhd. Labor Leasing, 207 F.3d 500 (8th Cir. 2000). We concluded that the District Court had made some errors in ruling on the Fund's petition and so it was an abuse of the court's discretion to deny the contempt petition. In remanding, we also said this in a footnote: "The suggestion that the Appellees' attorneys advised them to pay their legal fees in lieu of making court-ordered payments, if true, is troubling. But we have no occasion to consider the question [of whether prior counsel might be held in contempt] on this record because the Fund only sought a contempt sanction against the Appellees and Gula, not their lawyers." Id. at 507 n.7.

On remand, the Fund amended the petition to name the corporations' and officers' attorneys as additional alleged contemnors. The District Court held a

hearing on the petition and determined that Steven Gula and Dysart Taylor acted in contempt of the court's orders.[3] Chicago Truck Drivers Union Pension Fund v. Bhd. Labor Leasing, 230 F. Supp. 2d 963, 970 (E.D. Mo. 2002). According to the court, the law firm aided and abetted Gula's failure to pay the Fund. The court agreed with the Fund's assertion that attorneys at Dysart Taylor were aware that the corporations' assets were not sufficient to pay both the Fund and other creditors, including Dysart Taylor, and nevertheless advised Gula to pay the others first. As a sanction, the District Court ordered Dysart Taylor to pay the Fund the amount that it had received in payment from the corporations, $12,855.55. Dysart Taylor appeals. "We review the district court's decision to enter a civil contempt order for abuse of discretion, reviewing its factual findings for clear error." Jake's, Ltd. v. City of Coates, 356 F.3d 896, 899 (8th Cir. 2004).

Dysart Taylor first asserts that the firm cannot be held in contempt of the December 1996 order because it was neither a final order nor an injunction and it could not be construed as an injunction. We disagree. In our most recent prior opinion in this litigation, when speaking of the amended order of June 1997, we noted that although it "was not labeled an injunction, it looked like one: it compelled the [corporations'] affirmative, prospective obedience with it." Chicago Truck Drivers, 207 F.3d at 507. The December order was no different. Dysart Taylor's argument that the order lacked the necessary specificity is unavailing. The order is not "unintelligible," nor does its "command . . . def[y] comprehension." Int'l Longshoremen's Ass'n, Local 1291 v. Philadelphia Marine Trade Ass'n, 389 U.S. 64, 76 (1967). While the December 1996 order could have been written with more detail (as it ultimately was in June 1997), it nevertheless put the corporations on notice of what they should do and when they should do it: "to pay to plaintiffs the interim payments demanded by the plaintiffs in the amended demand" and to do so "within 60 days of the date of the judgment order issued herewith." Chicago Truck Drivers,

---

[3]Steven Gula has not appealed.

950 F. Supp. at 1471. In any event, the attorneys knew that Gula's corporations were on shaky ground financially and were responsible for substantial interim withdrawal payments. And they should have known, if they did not, that advising Gula to pay other bills (including Dysart Taylor's own bills) before paying the Fund was the same as advising Gula to disregard the order. We conclude that Dysart Taylor was complicit in "a violation of a court order by one who fully understands its meaning but chooses to ignore its mandate." Int'l Longshoremen's Ass'n, 389 U.S. at 76.

As for finality, the fact that the Fund sought to amend the order to increase the amount owed by adding on interest, attorney fees, and other costs did not relieve the corporations of responsibility to make the interim payments while they waited for the district court to rule on the motion. An injunction need not be a final and appealable order to be enforceable. And even if this were not an injunction, "[w]ithdrawal liability shall be payable in accordance with the schedule set forth by the plan sponsor . . . beginning no later than 60 days after the date of the demand notwithstanding *any* request for review or appeal of determinations of the amount of such liability or of the schedule." 29 U.S.C. § 1399(c)(2) (emphasis added). The corporations thus have arguably had an obligation to pay withdrawal liability from sixty days following the time of the Fund's first demand, and that obligation was not changed but only reiterated when the District Court entered its order in December 1996. See, e.g., Trs. of Plumbers & Pipefitters Nat'l Pension Fund v. MAR-LEN, Inc., 30 F.3d 621, 626 (5th Cir. 1994) ("[A] reviewing court merely determines whether the pension plan's claim is nonfrivolous and colorable. If the claim for withdrawal liability is colorable, the employer must make interim payments while it contests the underlying liability." (footnote omitted)); Bd. of Trs. of Trucking Employees Welfare Fund, Inc. v. Centra, 983 F.2d 495, 507–08 (3d Cir. 1992) ("The pay now, dispute later principle . . . is well established . . . . [P]ayments must be made whether the underlying dispute is resolved through arbitration or by a federal court."). The corporations' failure to make interim payments was a violation of federal law beginning as early as sixty days after the Fund first made its demand, and ultimately

-5-

came to be a violation of a federal court order as well. In these circumstances, we do not think it was error for the District Court to entertain a motion for civil contempt based on violation of the court's December 1996 order implementing the Fund's demand.

Dysart Taylor also challenges the District Court's fact-finding on the value of the corporate assets that were available in December 1996 and June 1997 (when the court issued the interim payment orders) and what the law firm knew about that situation; the sufficiency of the evidence supporting the court's findings concerning Dysart Taylor's advice about which entities the corporations should pay first; and the court's failure to find that Dysart Taylor acted in bad faith before the court imposed sanctions for contempt. We conclude that the District Court cited sufficient documentary and testamonial evidence to support the facts as the court found them. See Chicago Truck Drivers, 230 F. Supp. 2d at 967–68 (E.D. Mo. 2002). Moreover, the court had the advantage of being in a position to evaluate the credibility of witnesses and their live testimony. Having conducted our own careful review of the record, we cannot say that the court clearly erred in finding the facts as it did and concluding that the evidence was sufficient to find Dysart Taylor in contempt. Further, we agree that the law firm's bad faith vel non is immaterial to the court's finding of contempt in this case.

Finally, Dysart Taylor challenges the court's determination that it was in contempt of the June 25, 1997, order when the firm had been granted leave to withdraw as counsel twelve days before that. Again, we see no error. The District Court did not fashion the contempt order or the sanction with reference to the two orders, that is, specifying one amount for violating the 1996 order and another for violating the 1997 order. Instead, the court found Dysart Taylor in contempt for failing to advise Gula to use the corporations' remaining assets to pay its withdrawal liability, which liability was set out in the order filed in December 1996 when the firm was actively representing the corporations. The results of Dysart Taylor's contempt

-6-

was ongoing—the corporations paid the law firm and others, to the exclusion of the Fund, until their assets were exhausted and they were unable to comply with the court's orders.

Because we cannot say that the District Court abused its discretion in finding Dysart Taylor in civil contempt of court and in ordering sanctions, we affirm.

MELLOY, Circuit Judge, dissenting.

I respectfully dissent from the majority opinion. I believe that the lawyers in this case are being penalized for doing what lawyers do. That is, they give advice to clients, sometimes clients who are in financial distress, and get paid for that advice. The district court, and now the majority, have held that doing so may subject the lawyer to civil contempt and the payment of substantial damages. I believe that such a holding puts at peril any attorney who represents financially distressed clients.

In order to fully address my concerns, I think it is important to set forth a chronology of significant events in this case. The Chicago Truck Drivers, Helpers and Warehouse Workers Union (Independent) Pension Fund (the "Fund") and its trustees brought suit against four trucking companies owned by Steven Gula to collect interim payments for withdrawal liability under ERISA. Appellant Dysart Taylor represented the trucking companies during part of that underlying action that gave rise to the finding of contempt.

On December 4, 1996 the district court granted the Fund's motion for summary judgment. In granting the motion, the court found the defendants liable for the withdrawal of interim payments under ERISA. The district court ordered the trucking companies to begin making interim payments within sixty days. As the majority notes, the Fund, not the defendant, then filed a motion to alter or amend the judgement pursuant to Fed.R.Civ. Proc. 59(e).

The court granted Dysart Taylor leave to withdraw from the case on June 13, 1997. On June 25, 1997 the district court entered an amended judgment against the trucking companies. This amended order clarified the amount owed and the schedule of payments. It required the trucking companies to pay past-due interim payments, liquidated damages, attorneys' fees and costs, interest, and to make quarterly installments beginning August 1, 1997.

The Fund did not receive any payments by November 1998. Accordingly, the Fund moved to hold the corporate defendants and Steven Gula, the corporate defendants' sole officer and shareholder, in contempt. The district court denied the motion and the Fund appealed. On March 24, 2000 we remanded the case after concluding that the district court improperly placed the burden on the Fund to show that the alleged contemnors' inability to pay. Chicago Truck Drivers v. Brotherhood Labor Leasing, 207 F.3d 500, 505 (8th Cir. 2000) Further, we stated that the Fund was entitled to develop its case against Gula in spite of the fact that he was not named in the prior payment orders.

On remand the Fund filed an amended petition for contempt. The amended petition joined all of the attorneys who had represented the corporate defendants as alleged contemnors, including Dysart Taylor, and the corporate defendants. Following a hearing the district court held that Steven Gula and Dysart Taylor acted in contempt of the court's directives. The district court found that Dysart Taylor was aware that the corporations' assets were insufficient to pay both the Fund and the other creditors, including Dysart Taylor. It also found that the law firm provided legal advice regarding whom to pay. In particular, the district court concluded that Dysart Taylor aided and abetted Gula's failure to pay the Fund. The district court ordered Dysart Taylor to pay the Fund the amount it had received in payment from the corporations.

-8-

The Fund "bears the burden of proving facts warranting a civil contempt order by clear and convincing evidence." Indep. Fed'n of Flight Attendants v. Cooper, 134 F.3d 917, 920 (8th Cir. 1998). "The contempt power is a most potent weapon, and therefore it must be carefully and precisely employed." Mahers v. Hedgepeth, 32 F.3d 1273, 1275 (8th Cir. 1994). I do not believe the evidence in this case meets this stringent standard.

When Dysart Taylor received the December 1996 order it was not clear that the order constituted an appealable final injunction. The law firm was faced with advising its client as to what to do. What was the effect of the Rule 59(e) motion? Was the order final, given the filing of the motion to alter or amend? Was the order appealable? Can other operating expenses be paid before payment of the withdrawal liability? Should the company begin paying the judgment (assuming it was a final judgment), appeal, attempt to settle, or file bankruptcy? Dysart Taylor ultimately advised its client that it could pay other creditors and then pay the Fund with any money remaining. Dysart Taylor's receipt of payment for this representation is what gives rise to this contempt proceeding.

Even if one assumes that Dysart Taylor should have realized the December 1996 order should have been construed as an injunction and gave poor advice, I do not believe its actions rise to the level of aiding and abetting contempt. I part company with the majority when it states that the law firm's bad faith is immaterial to the court's finding of contempt. A law firm that gives legal advice in good faith is not subject to contempt as an aider and abettor of its client. See In re Watts 190 U.S. 1, 29 (1903) ("In the ordinary case of advice to clients, if an attorney acts in good faith and in the honest belief that his advice is well founded and in the just interests of his client, he cannot be held liable for error in judgment."); Maness v. Meyers, 419 U.S. 449, 467 (1975) (holding that an attorney is not subject to contempt for good faith legal advice regarding the Fifth Amendment).

In late 1996 and early 1997 the issue of whether the interim order was, in fact, an injunction was not at all clear. At the time the order was entered, even the Magistrate Judge did not believe the order was an injunction as evidenced by his failure to treat it as such in 1996. Although this court stated that the district court's June 25, 1997 order looked like an injunction even if it was not labeled one, it never addressed whether the December 4, 1996 judgment could be construed as an injunction. Chicago Truck Drivers, 207 F.3d at 507. Further, merely "looking" like an injunction does not satisfy the clear and convincing evidence standard required to make a finding of contempt.

Moreover, at the time of the entry of the December 1996 order, the case law tended to suggest that the order was not an injunction. The only circuit authority on the issue had found that such an interim order for payment of ERISA withdrawal liability was not an injunction. The Seventh Circuit held in a case similar to the case at bar, Trustees of the Chicago Truck Drivers, Helpers and Warehouse Workers Union Pension Fund v. Central Transport, Inc., 935 F.2d 114, 117 (7th Cir. 1991), that an interim order under ERISA requiring payments pending arbitration is not an injunction.[4] Accordingly, it was not obvious that the order in this case was an injunction. This uncertainty was exacerbated by the legitimate questions the attorneys had regarding whether the order was a final order since the plaintiff filed a timely motion to alter and amend the judgment pursuant to Fed. R. Civ. P. 59(e). To that end, neither party appealed the judgment, likely due to doubt regarding whether it was ripe for appeal. The Fund never tried to enforce the order. It only started execution proceedings in November 1998, after the entry of the final order in

_____

[4]The Seventh Circuit later found that failure to obey a court order to pay ERISA withdrawal liability may be enforced by a contempt proceeding. Central States, Southeast and Southwest Areas Pension Fund v. Wintz Properties, Inc., 155 F.3d 868, 873 (7th Cir. 1998). Our court also so held in the appeal of an earlier order in this case. Chicago Truck Drivers, 207 F.3d at 505. However, both of those decisions came well after the events that give rise to this contempt action.

June 1997. Accordingly, I firmly believe the movant fell far short of proving by clear and convincing evidence that the defendant law firm aided and abetted a violation of an injunction when the firm did not even realize that an injunction existed.

Even if there was an injunction in place, it is not impermissible to advise a client regarding how to deal with an injunction order and to get paid for those services. In this case, the attorneys had to review the terms of the injunction, confer with their client, respond to the motion to alter and amend the judgment, and review the available options given the fact that there was insufficient money to pay the judgment. In light of the attorneys reasonable belief that the judgment was not an injunction, much less a final injunction, the attorneys' advice regarding how to deal with the order was not sufficiently improper as to rise to the level of contempt.

Finally, I am troubled by the majority's statements that the contempt finding was predicated in part on the fact that, even if there was no injunction, the withdrawal liability was a legal obligation of the company. Slip Opinion at 5. Again, attorneys deal with legal obligations all the time, such as individuals who are delinquent in paying their federal or states taxes, in default on their mortgage, or behind on their credit card payments. Practically every person in a bankruptcy proceeding is delinquent on paying a number of legal obligations. Under the majority's ruling, a lawyer advising a financially distressed client as to how to deal with competing legal obligations is at risk of a contempt citation for providing such advice and receiving payment for those services. As the petitioner correctly suggests, to expose attorneys to a possible contempt in this situation will temper attorney advocacy and impede clients' ability to obtain advice when it is most needed. As the Supreme Court has said in a criminal context:

> If performance of a lawyer's duty to advise a client that a privilege is
> available exposes a lawyer to the threat of contempt for giving honest

advice it is hardly debatable that some advocates may lose their zeal for forthrightness and independence.

Maness, 419 U.S. at 466 (1975).

Accordingly, I respectfully dissent.

_____