BOWMAN, Circuit Judge.
The law firm of Dysart, Taylor, Lay, Cotter and McMonigle, P.C., appeals from *957 the order of the District Court[1] finding the firm in civil contempt of court and imposing sanctions. We affirm.
In the underlying action that gave rise to the finding of contempt, Chicago Truck Drivers, Helpers and Warehouse Workers Union Pension Fund and its trustees (collectively, the Fund) sued several corporations owned by Steven Gula to collect withdrawal liability payments under ERISA.[2] At one time during the relevant period, the corporations were represented by Dysart Taylor. On December 4, 1996, the District Court entered summary judgment for the Fund, holding that the corporations would “be required, within 60 days of the date of the judgment order issued herewith, to pay to plaintiffs the interim payments demanded by the plaintiffs in the amended demand.” Chicago Truck Drivers Union Pension Fund v. Bhd. Labor Leasing, 950 F.Supp. 1454, 1471 (E.D.Mo.1996). In accordance with the provisions of ERISA, the court ordered that any further disputes between the parties would be “submitted to an arbitrator.” Id. On June 13, 1997, Dysart Taylor was granted leave to withdraw from the case. On June 25, 1997, the District Court entered an amended judgment against the corporations, which included awards to the Fund for delinquent and future withdrawal liability, with dollar amounts noted and due dates specified, and awards for attorney fees, costs, interest, and liquidated damages. Chicago Truck Drivers Union Pension Fund v. Bhd. Labor Leasing, 974 F.Supp. 751, 756-57 (E.D.Mo.1997).
In November 1998, the Fund sought to have the corporations and their officers held in contempt for failure to pay any of the court-ordered judgments. The District Court denied the Fund’s petition. The Fund appealed and we remanded. Chicago Truck Drivers Union Pension Fund v. Bhd. Labor Leasing, 207 F.3d 500 (8th Cir.2000). We concluded that the District Court had made some errors in ruling on the Fund’s petition and so it was an abuse of the court’s discretion to deny the contempt petition. In remanding, we also said this in a footnote: “The suggestion that the Appellees’ attorneys advised them to pay their legal fees in lieu of making court-ordered payments, if true, is troubling. But we have no occasion to consider the question [of whether prior counsel might be held in contempt] on this record because the Fund only sought a contempt sanction against the Appellees and Gula, not their lawyers.” Id. at 507 n. 7.
On remand, the Fund amended the petition to name the corporations’ and officers’ attorneys as additional alleged con-temnors. The District Court held a hearing on the petition and determined that Steven Gula and Dysart Taylor acted in contempt of the court’s orders.[3] Chicago Truck Drivers Union Pension Fund v. Bhd. Labor Leasing, 230 F.Supp.2d 963, 970 (E.D.Mo.2002). According to the court, the law firm aided and abetted Gula’s failure to pay the Fund. The court agreed with the Fund’s' assertion that attorneys at Dysart Taylor were aware that the corporations’ assets were not sufficient to pay both the Fund and other creditors, including Dysart Taylor, and nevertheless *958 advised Gula to pay the others first. As a sanction, the District Court ordered Dy-sart Taylor to pay the Fund the amount that it had received in payment from the corporations, $12,855.55. Dysart Taylor appeals. “We review the district court’s decision to enter a civil contempt order for abuse of discretion, reviewing its factual findings for clear error.” Jake’s, Ltd. v. City of Coates, 356 F.3d 896, 899 (8th Cir.2004).
Dysart Taylor first asserts that the firm cannot be held in contempt of the December 1996 order because it was neither a final order nor an injunction and it could not be construed as an injunction. We disagree. In our most recent prior opinion in this litigation, when speaking of the amended order of June 1997, we noted that although it “was not labeled an injunction, it looked like one: it compelled the [corporations’] affirmative, prospective obedience with it.” Chicago Truck Drivers, 207 F.3d at 507. The December order was no different. Dysart Taylor’s argument that the order lacked the necessary specificity is unavailing. The order is not “unintelligible,” nor does its “command ... def[y] comprehension.” Int’l Longshoremen’s Ass’n, Local 1291 v. Philadelphia Marine Trade Ass’n, 389 U.S. 64, 76, 88 S.Ct. 201, 19 L.Ed.2d 236 (1967). While the December 1996 order could have been written with more detail (as it ultimately was in June 1997), it nevertheless put the corporations on notice of what they should do and when they should do it: “to pay to plaintiffs the interim payments demanded by the plaintiffs in the amended demand” and to do so “within 60 days of the date of the judgment order issued herewith.” Chicago Truck Drivers, 950 F.Supp. at 1471. In any event, the attorneys knew that Gula’s corporations were on shaky ground financially and were responsible for substantial interim withdrawal payments. And they should have known, if they did not, that advising Gula to pay other bills (including Dysart Taylor’s own bills) before paying the Fund was the same as advising Gula to disregard the order. We conclude that Dysart Taylor was complicit in “a violation of a court order by one who fully understands its meaning but chooses to ignore its mandate.” Int’l Longshoremen’s Ass’n, 389 U.S. at 76, 88 S.Ct. 201.
As for finality, the fact that the Fund sought to amend the order to increase the amount owed by adding on interest, attorney fees, and other costs did not relieve the corporations of responsibility to make the interim payments while they waited for the district court to rule on the motion. An injunction need not be a final and appealable order to be enforceable. And even if this were not an injunction, “[withdrawal liability shall be payable in accordance with the schedule set forth by the plan sponsor ... beginning no later than 60 days after the date of the demand notwithstanding any request for review or appeal of determinations of the amount of such liability or of the schedule.” 29 U.S.C. § 1399(c)(2) (emphasis added). The corporations thus have arguably had an obligation to pay withdrawal liability from sixty days following the time of the Fund’s first demand, and that obligation was not changed but only reiterated when the District Court entered its order in December 1996. See, e.g., Trs. of Plumbers & Pipefitters Nat’l Pension Fund v. Mar-Len, Inc., 30 F.3d 621, 626 (5th Cir.1994) (“[A] reviewing court merely determines whether the pension plan’s claim is nonfrivolous and colorable. If the claim for withdrawal liability is colorable, the employer must make interim payments while it contests the underlying liability.” (footnote omitted)); Bd. of Trs. of Trucking Employees Welfare Fund, Inc. v. Centra, 983 F.2d 495, 507-08 (3d Cir.1992) (“The pay now, dispute later principle ... is well established.... [P]ayments must *959 be made whether the underlying dispute is resolved through arbitration or by a federal court”)- The corporations’ failure to make interim payments was a violation of federal law beginning as early as sixty days after the Fund first made its demand, and ultimately came to be a violation of a federal court order as well. In these circumstances, we do not think it was error for the District Court to entertain a motion for civil contempt based on violation of the court’s December 1996 order implementing the Fund’s demand.
Dysart Taylor also challenges the District Court’s fact-finding on the value of the corporate assets that were available in December 1996 and June 1997 (when the court issued the interim payment orders) and what the law firm knew about that situation; the sufficiency of the evidence supporting the court’s findings concerning Dysart Taylor’s advice about which entities the corporations should pay first; and the court’s failure to find that Dysart Taylor acted in bad faith before the court imposed sanctions for contempt. We conclude that the District Court cited sufficient documentary and testimonial evidence to support the facts as the court found them; See Chicago Truck Drivers, 230 F.Supp.2d at 967-68 (E.D.Mo.2002). Moreover, the court had the advantage of being in a position to evaluate the credibility of witnesses and their live testimony. Having conducted our own careful review of the record, we cannot say that the court clearly erred in finding the facts as it did and concluding that the evidence was sufficient to find Dysart Taylor in contempt. Further, we agree that the law firm’s bad faith vel non is immaterial to the court’s finding of contempt in this case.
Finally, Dysart Taylor challenges the court’s determination that it was in contempt of the June 25, 1997, order when the firm had been granted leave to withdraw as counsel twelve days before that. Again, we see no error. The District Court did not fashion the contempt order or the sanction with reference to the two orders, that is, specifying one amount for violating the 1996 order and another for violating the 1997 order. Instead, the court found Dysart Taylor in contempt for failing to advise Gula to use the corporations’ remaining assets to pay its withdrawal liability, which liability was set out in the order filed in December 1996 when the firm was actively representing the corporations. The results of Dysart Taylor’s contempt was ongoing—the corporations paid the law firm and others, to the exclusion of the Fund, until their assets were exhausted and they were unable to comply with the court’s orders.
Because we cannot say that the District Court abused its discretion in finding Dy-sart Taylor in civil contempt of court and in ordering sanctions, we affirm.

. The Honorable David D. Noce, United States Magistrate Judge for the Eastern District of Missouri, sitting with the consent of the parties under 28 U.S.C. § 636(c).

. Employee Retirement Income Security Act of 1974 (as amended by the Multiemployer Pension Plan Amendments Act of 1980), 29 U.S.C. §§ 1001-1461. Under ERISA, an employer that withdraws from a multiemployer pension plan will be liable to the plan for "the allocable amount of unfunded vested benefits.” 29 U.S.C. § 1381(b)(1).

.Steven Gula has not appealed.